BONDHOLDERS AND PURCHASERS OF THE IRON RAILROAD v. TOLEDO, D. & B. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 20, 1894.)

No. 106.

APPEALABLE JUDGMENTS AND ORDERS—DENIAL OF REHEARING.

After a decree finally disallowing a claim to a fund in court, a rehearing was asked, on grounds involving the correctness and regularity, not the

validity, of the decree. *Held*, that the petition therefor could not be regarded as a petition to vacate the decree as void, and an order dismissing the petition was not appealable.

Appeal from the Circuit Court of the United States for the District of Indiana.

This was a petition by the Bondholders and Purchasers of the Iron Railroad for a rehearing of a claim against proceeds of sale on foreclosure of mortgages on that and other railroads, constituting the Toledo, Cincinnati & St. Louis Railroad. The Toledo, Delphos & Burlington Railroad Company and the Toledo, Cincinnati & St. Louis Railroad Company demurred to the petition. The demurrer was sustained, and thereupon the petition was dismissed. The petitioners appealed.

This appeal is from an order refusing an application for a rehearing. The Iron Railroad, situated entirely in the southern district of Ohio. was a constituent part of the Toledo, Cincinnati & St. Louis Railroad, which in August, 1883, was put into the hands of a receiver by orders of the United States circuit courts for the southern district of Illinois, for Indiana, and for the western division of the northern district of Ohio, and was operated by the receiver as a part of the system until the 20th of October, 1883, when, by order of the court in Ohio, the order for the appointment of the receiver was in respect to the lines in Ohio set aside; and, upon bills filed by the trustees of the mortgages upon the several lines in that state, new orders were made appointing a receiver for each of those lines separately, but naming the same person as receiver in all of the cases. In order that there might be a continued unity of management and operation, the courts of the seventh circuit appointed the same person receiver of the lines in that circuit in place of the receiver first appointed, and accordingly the lines in both circuits were operated as a unit until, by the decree of the court in the southern district of Ohio foreclosing the mortgage on the Iron Railroad, that road was sold to a committee of its bondholders.

Early in the proceedings, and while that line was in the possession of the receiver, it was claimed by and in behalf of the bondholders that the earnings of the Iron Railroad exceeded its expenditures, and that the excess, which was being or had been expended in the operation of the system, should be made good by the other lines. On the 5th of April, 1884, Jacob D. Cox was appointed a special master, and directed to inquire and state, among other things, "what may be due from the one interest or estate to the other, and what proportion each should bear in respect of any charges and liabilities in the premises." The special master, having made his investigation, filed a preliminary report in the court at Cincinnati, and also (in case No. 7,706) at Indianapolis, where, on the 3d of October, 1884. it was stipulated that the same should be deemed and taken to be of force in the consolidated suits (Nos. 7,814 and 7,815) there pending, as if filed therein, and as if the order of reference to the special master had been made in those suits. That report showed a balance of income of the Iron Railroad over expenses, between November 1st and April 1st, of $33,716.37. A later report was made on the 26th day of July, 1884, showing, among other things, what proportions of the receiver's indebtedness should be borne by the several mortgaged divisions of the system; "the sum of $33,716.37, before reported to be due the Iron Railroad from the other divisions," being reported as "included in their deficits and a part of the undisputed indebtedness of the receiver, subject, however, to be reduced by the proportion of car rentals, etc., charged that road, if the same shall be approved by the court, as reported in the former report of the master."

On the 8th day of February, 1886, the bondholders, who are appellants here, filed in the court at Indianapolis a petition alleging that $41,133.91 of the earnings of the Iron Railroad had been diverted by the receivers, and applied to the use of the other divisions, including those embraced in the causes pending in the district of Indiana (Nos. 7,706 and 7,814), and that, by the ratio

adopted by the special master for apportioning the general expenses of operation, the division embraced in No. 7,706 should bear 30.05 per cent., and the division embraced in No. 7,814 should bear 29.85 per cent., of the whole; making the sum due from one division $12,360.73, and from the other $12,-278.46, for the payment of which sums, respectively, the petitioners asked decrees. This petition, it is alleged in the application for 'a rehearing, was never passed upon by the court.

Afterwards, on January 7, 1887, the special master made a third and final report, showing that the net earnings of the Iron Railroad, for the entire time it was in the possession of the receiver, had been $41,748.39; that the whole earnings of the system had been used for operating expenses; and that, as matter of law, "the excess of earnings over expenses in the case of the Iron Railroad, so used by the receivers for operating the other divisions of the system, ought to be a charge against the fund arising from the sale of such other divisions," etc.; and on February 19th, ensuing, exceptions filed in the court at Cincinnati were there overruled, and the report confirmed. That report was filed in the court at Indianapolis on the 12th of January, 1887. On the 1st of October, 1886, it was ordered at Cincinnati (the circuit judges of both circuits being present) that the indebtedness of the first receivership of the system and of the various divisions thereof, in the several actions brought in both circuits, be recognized as debts of the court, the same as the debts of the second receiver, and A. J. Ricks and W. P. Fishback were appointed to take evidence and report the indebtedness. Their report was filed at Cincinnati and Toledo March 11, 1887, and at Indianapolis the day before, among other things approving the claim of the Iron Railroad, as reported by Special Master Cox, subject to such legal objection as might be made; and it is alleged that no exception to that report was ever taken or filed in any of the courts.

On the 6th of April, 1887, the circuit judges of the two circuits and the district judge for the northern district of Ohio met at the city of Cleveland, for the purpose of determining various pending questions, and there agreed upon a decree, since known as the "Cleveland Decree," which was entered in the various courts having jurisdiction,—at Cincinnati April 12, and at Indianapolis April 16, 1887. By the eighth clause of that decree it is ordered "that the claim of the Iron Railroad for forty-one thousand seven hundred and forty-eight and 39-100 ($41,748.39) dollars, reported and allowed by Governor Cox, as special master, be, and the same is hereby, rejected and disallowed. The exceptions now allowed to be filed to the master's report, allowing said claim, are hereby sustained; and it is finally ordered, adjudged, and decreed that the said Iron Railroad and the purchasers thereof at foreclosure sale take nothing by said claim and proceedings thereunder,"—from which decree an appeal to the supreme court was prayed and granted, upon the giving of a bond in a sum named, "to the approval of the circuit court of the United States for the southern district of Ohio, western division." The appeal was not prosecuted, but on the 28th of April a petition for a rehearing was filed in the court at Cincinnati, and on the 1st of August ensuing was granted; the court ordering that the decree be vacated and annulled in respect to the claim of the Iron Railroad, and that the claim stand for rehearing and further order, in the causes pending in the sixth circuit. Upon the rehearing it was adjudged by the court at Cincinnati that the former decree disallowing the claim be annulled, and that "said claim of the Iron Railroad for net earnings is hereby re-established in all respects as fully as if the decree of April, 1887, had never been made: provided, however, that this decree does not warrant any enforcement or collection of said claim save in cases Nos. 3,554, 3,556, 3,577, 3,578, and 3,579 [all pending in Ohio], without the concurrence herein of the circuit courts of the United States for the district of Indiana and the district of Illinois." Counsel representing all divisions of the system were present at that hearing, and in view of a previous order made by Judge Baxter, surrendering primary jurisdiction over the Toledo division to the circuit courts of the seventh circuit, the decree re-establishing the claim was not entered at Toledo.

The petition for a rehearing was not filed or presented at Indianapolis until November 8, 1889, where, after a recital of the appearance of the parties by counsel, argument, and submission, it was ordered "that the petition be al-

lowed, and, by agreement of counsel in open court, it is further ordered that the petition be, and the same is hereby, set down for further hearing before this court on the 13th day of January, A. D. 1890." On the 27th of February ensuing, upon a showing by affidavit that there had been net earnings by the Toledo division which should be taken into the accounting between divisions, W. P. Fishback, master, was directed to investigate and report the facts; and on the 13th of February. 1891, he reported that the evidence failed to show earnings above expenses by the Toledo division. Nothing further seems to have been done until February 29, 1892, when the amended petition for a rehearing was filed, setting forth the facts stated, with details and circumstances which it is not thought necessary or profitable to recite here. To this petition there was opposed a motion to strike out, and also a demurrer, which last the court, on the 28th day of January, 1893, sustained, and ordered and decreed that the petition and amended petition for rehearing be dismissed; and from that decree or order this appeal is prosecuted.

The prayer of the amended petition is divided into seven clauses, all directly or indirectly to the effect that in the seventh circuit, as had already been done in the sixth circuit, there should be granted a rehearing of the Cleveland decree touching the claim of the Iron Railroad, and that the claim be re-established and apportioned over the several divisions of the system for payment out of the proceeds of sale,—the fifth clause being: "That so much of said Cleveland decree as purports to disallow said Iron Railroad claim may be vacated, annulled, and held for naught, and as no bar to the enforcement of a just proportion of said Iron Railroad claim against said St. Louis and Toledo divisions, including said Toledo terminals, so far as the causes in the district of Indiana are concerned."

The terms of the circuit court of the United States held at Indianapolis during the time of these transactions commenced on the first Tuesdays of May and November of each year.

John C. Coombs, Gustavus H. Wald, and Chas. H. Hanson, for appellants.

Robt. G. Ingersoll and Brown & Geddes, for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge (after stating the facts). It is well settled that there can be no appeal from an order granting or refusing an application for a rehearing. Steines v. Franklin Co., 14 Wall. 15; Railway Co. v. Heck, 102 U. S. 120; Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696; Roemer v. Bernheim, 132 U. S. 103, 10 Sup. Ct. 12; Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736.

The appellants contend, however, that the decree of which a rehearing was asked was neither final nor valid; that their petition for rehearing was such only in form; that "in substance and reality it was purely and simply a petition to vacate the alleged decree of April 16, 1887, on the ground that it was absolutely null and void, and was not a decree touching matters pending in the seventh circuit at all." This position is not tenable. Both by its averments and by its prayer, it is clear that the petition was intended to be and is just what it purports to be—a petition for a rehearing. It was not filed in time under equity rule 88, it is true, but equally for any other purpose than a rehearing it has no standing or support. If, as contended, the decree was not final, there is for that reason no appeal from it; and if it was not valid, or was absolutely null and void, or did not touch matters pending in the seventh circuit, then

it is no obstacle to any procedure pending, or that might be instituted, for the establishment and enforcement of the claim of the appellants, and the appeal is unnecessary. But the grounds on which a rehearing was asked involve the correctness and regularity, and not the validity, of the decree. If, for instance, no exception had been filed to the several master's reports in support of the claim of the Iron Railroad and for that reason there should have been a decree in accordance with the findings and recommendations of the special master, the objection is not jurisdictional, and the decree, at most, could only be said to be erroneous. For the correction of the error there was a choice of procedure by appeal or by petition for a rehearing. But the appeal, if one is taken, must be always from the original decree, and not from the ruling on a petition for rehearing, if a rehearing has been asked.

The "Cleveland Decree," so called, as entered on the 16th of April, 1887, in the court for the district of Indiana, it is clear, was not invalid; and it was effective to dispose of the claim of the appellants, whether considered as having been brought under the jurisdiction of the court by the reports of the special masters or by the bondholders' petition of February 8, 1886. The general claim, as embodied in those reports, and as more particularly stated and presented by the petition for apportionment among the divisions of the road whcih extended into the seventh circuit, was properly before the court for adjudication; and, whatever error there may have been in the decision, the validity of the decree is beyond attack. Though presented in two forms,—by the masters' reports, and by the petition of bondholders,—the claim was essentially one, and was pending when the decree agreed upon by the judges at Cleveland was entered, rejecting the claim as an entirety; and, to the extent of the jurisdiction of the court in Indiana over the subject and the parties, that decree, when entered there, was a final disposition of the claim in both forms. The decree had its force, not from anything done or agreed upon at Cleveland or elsewhere in the sixth circuit, but by virtue of the power and jurisdiction of the court which pronounced it; and the subsequent granting of a rehearing by the court at Cincinnati could have had no effect upon the decree in Indiana, even if the proviso to the contrary had been omitted from the Cincinnati decree.

The petition for a rehearing, to be available, should have been presented at the term when the decree was entered; and if when so presented it had been denied, the appeal should have been from the original decree.

This appeal should be dismissed, at the costs of the appellants; and it is so ordered.