## IGLESIAS v. BANCO TERRITORIAL Y AGRICOLA DE PUERTO RICO
### et al.

(Circuit Court of Appeals, First Circuit.    November 19, 1920.)

No. 1455.

1. **Appeal and error ⊜87(6)—Order denying rehearing on claim against insolvent not appealable.**

   The overruling of a motion for rehearing on the claim of a creditor of an insolvent corporation to priority *held* within the discretion of the court and not reviewable on appeal.

2. **Appeal and error ⊜80(3)—Appeal lies only from final decree.**

   A decree directing payment of the proceeds of a mortgage sale and other funds into the registry of the court to await the determination of priorities of claims based on receiver's certificates *held* not a final decree, and not appealable.

Appeal from the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Suit in equity by the Gregg Company, Limited, against the Utuado Sugar Company; Banco Territorial y Agricola de Puerto Rico, trustee, and others. Luis F. Iglesias, intervening petitioner, appeals. Appeal dismissed.

Jorge V. Dominguez, of San Juan, P. R., for appellant.
Henry G. Molina, of San Juan, P. R., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. In July, 1912, the Utuado Sugar Company was put into the hands of a receiver on the application of the Gregg Company, Limited. It owned lands for the cultivation of sugar cane and a factory for the manufacture of raw sugar, including a railway track, cars, and locomotives. October 6, 1911, it mortgaged the greater part of its property to the appellee, the Banco Territorial y Agricola of Porto Rico, as trustee, to secure an issue of bonds for $200,000.

On June 30, 1913, the receiver appointed in the proceedings petitioned the court for leave to borrow money and to issue therefor receiver's certificates in a sum not exceeding $50,000, the certificates to "be a first and prior lien upon the entire crop of sugar, or part thereof, which may correspond to the Utuado Sugar Company or to the receiver under the contracts now or hereafter to be in force between it and the 'colonos.'" On the same day an order was entered authorizing the receiver to borrow money for use in the administration of the estate and particularly for the cultivation of crops and the operation of the plant as prayed for, and to issue receiver's certificates therefor; and it was further provided therein that the certificates "shall be a first and prior lien upon all of the sugar which may become the property of the Utuado Sugar Company as the result of grinding canes during the next ensuing crop of 1913–1914," and that "the receiver may make such contract or contracts as he may deem to the best interest of the estate under his charge, for the selling of sugars to be

manufactured during such crop, and such contracts shall be made on the best terms which the said receiver may be able to obtain."

September 5, 1913, the receiver entered into an arrangement with Luis F. Iglesias, the appellant, for a loan of $30,000, which was evidenced by a notarial deed wherein the order of June 30, 1913, was referred to as constituting the authority of the receiver in the premises. In this deed it was provided that the loan of $30,000 shall constitute "a first and preferred lien upon all of the sugars which may correspond with the Utuado Sugar Company in the said crop by virtue of the grinding contracts above set forth in this deed, and any other sugars which may be made from other canes of the Utuado Sugar Company or other persons and likewise upon all the properties, rights and actions which may belong to said corporation by reason of said contracts or which said corporation may acquire by virtue of said contracts."

The receiver in the operation of the plant and the manufacture of the 1913–1914 crop was unsuccessful, and in April, 1914, the court, being of the opinion that further grinding of the crop would result in a loss to all parties in interest, ordered the grinding stopped. Out of the proceeds of the crop the receiver paid Iglesias $17,705.50, leaving a balance of $12,294.50.

July 15, 1914, Iglesias filed a petition which was served upon the receiver of the Utuado Sugar Company and the attorneys for certain creditors. In this petition he prayed that he be granted a lien on all the sugar cane then growing or thereafter to be grown, and upon all the property of the Utuado Sugar Company, and that the lien on the latter property be declared to be paramount to any mortgage indebtedness or any operating expense of the receivership. At this time there was pending before the court an application by some or all of the mortgage bondholders and other creditors for a sale of the property and assets of the company, including the mortgaged property, and for a distribution of the proceeds among the bondholders and creditors.

July 22, 1914, the court entered a decree directing a sale of all the property and assets of the company in two separate lots, the first lot to "comprise all of the property included and described in the terms of the mortgage securing the mortgage bonds of the said defendant company," and the second lot "all of the balance of the property and assets of the said defendant company of every kind or nature and wheresoever situated." In the same decree a master was appointed who was directed to pass upon the accounts of the receiver, the claim of Iglesias, and any other accounts against the company and determine their priorities; also to report with reference to the names and amounts of all the bondholders.

December 7, 1914, the master filed a report in which he found that Iglesias' security had been exhausted, and that he was entitled to no priority for the balance of his claim. Exceptions were taken to the report, which were sustained, the court holding that the claim of Iglesias did not rank with the ordinary debts of the corporation, but was an administration debt and "must be protected as other administration debts," but did not wish to be understood as declaring that it was "one which takes priority of the mortgage debt." The matter was

then referred to a master to determine "(1) how much of the money borrowed from petitioner Iglesias now unpaid was used in the preservation of the property; (2) how much was used for the operation of the central, including advances and cultivation of crop, the two amounts to be reported separately; and (3) how much the crop of 1913–14 would have produced after deducting expenses of preservation of the mill and plant if the grinding had not been stopped," and stating that "for the first a lien on crop and corpus will attach according to the principles above declared; to the second such a lien will be denied, except out of the estimated net crop proceeds, if any, found under (3) the third head."

On March 11, 1916, the master filed a report finding the receiver had paid Iglesias $17,705.50, leaving a balance due him of $12,294.50; that besides the $30,000 borrowed from Iglesias the sum of $1,604.96 was realized from the sale of molasses and out of these sums $7,283.60 was expended for the preservation of the property—that is, went into the mill, buildings, and other equipment; that 95 per cent. of these expenses, or $6,919.42, was paid for with Iglesias' money; and that, as the balance of $12,294.50 due Iglesias was approximately 40.10 per cent. of the $30,000 advanced by him, his proportion of the above expense now due him for the preservation of the property was $2,774.68. He also found that the portion of the money borrowed from Iglesias that was used for the operation of the central and the cultivation of the crop was $9,519.82.

April 22, 1916, the court entered an order confirming the master's report and making the claim of Iglesias for $2,774.68 preferred, and stating that it should rank with the expenses of the receivership; but as to the balance of his claim for $9,519.82 and the order of its payment the court reserved its decision. On August 10, 1916, the court handed down an opinion in which it held that the balance of $9,519.82 due Iglesias was an administration debt, but "will have to rank in a class by itself after all other receivership claims which have heretofore been allowed. It will stand at the foot of the list, but will rank as a receivership claim. It will necessarily come ahead of all claims antedating the receivership debts, such as the claims of Armstrong and others."

No action appears to have been taken under the decree of July 22, 1914, so far as concerns the sale of the property covered by the mortgage given to secure the bonds. October 5, 1918, the Banco Territorial y Agricola, as trustee for the bondholders, appeared in the receivership proceedings and filed a petition asking leave to foreclose its mortgage. By decree of February 1, 1919, as amended February 10, 1919, the petition of the bank was granted on condition that the proceeds of the sale of the mortgaged property "shall be deposited in this court subject to the respective rights of the said trustee, bondholders and any other persons having an interest therein as such rights may hereafter be determined by this court." In this decree it was further provided that the sale which had taken place of all the property of the Utuado Company not covered by the mortgage to the bank and which had been sold for the sum of $5,000 should be confirmed. March 14, 1919, a sale of

the mortgaged property was had and the property was sold free of incumbrance for the sum of $72,500. This sale was confirmed by decree of April 14, 1919. July 18, 1919, the bank, as trustee, filed a petition asking that all the proceeds of the sale of the mortgaged property "be paid to it for distribution to the holders of the mortgage bonds secured by said mortgage." August 4, 1919, Iglesias filed an amended petition in which, after setting out various grounds of complaint, and stating that the sum of $1,109.88 had been paid on his account leaving a balance due him of $11,184.62, he prayed in substance that the previous orders of the court of April 22, and August 10, 1916, establishing the rank of the two portions of his claim, be reconsidered and that the full amount of the claim be declared a first and prior lien over the proceeds of the sale of the mortgaged and unmortgaged property of the company. He also prayed that Carlos Cabrera be ordered to pay back into court the sum of $5,103, which he alleged had been paid to Cabrera on six receiver's certificates that had been improperly procured, and that this sum be applied to the payment of his, Iglesias' claim.

On August 26, 1919, it was decreed "that the claim of Luis Felipe Iglesias * * * having been fully considered at previous terms of this court, and decrees entered thereon, and the court having been shown no good reason to change its conclusions heretofore arrived at, even if it could, refuses to reconsider said matters," and that "the $72,-500 produced by the sale of the property subject to mortgage after deduction of any priority payment as may hereafter be ordered be retained in the registry until all points as to the bonds are determined." It was further ordered "that Carlos Cabrera return to the registry of this court within 60 days from this date the sum of $2,668 prematurely collected by him and that this matter be and it hereby is referred to the master hereinafter appointed to determine what part, if any, of the moneys referred to in the receiver's certificates held by Carlos Cabrera were used for the preservation of the properties of the defendant."

It is from the decree of August 26, 1919, that this appeal is taken, and the errors assigned are that the court erred (1) in refusing to reconsider Iglesias' claim; (2) in failing to declare that his loan to the receiver was made with the tacit consent of all concerned, including the bondholders; (3) in failing to declare that the balance of the loan of Iglesias, namely, $11,184.26, constitutes a first and paramount lien on the corpus of the estate; (4) in declaring that the sum of $72,500, the proceeds of the mortgaged property was subject exclusively to distribution among the bondholders; (5) in failing to declare that Cabrera's receiver's certificates were improperly obtained; that they represented debts inferior to that of Iglesias and were not entitled to rank prior to his claim; and (6) in failing to order Cabrera to return the payments received on the certificates ($5,103) to be applied in payment of Iglesias' claim.

A motion to dismiss the appeal has been taken on the grounds: (1) That the decree of August 26, 1919, in so far as it is a refusal to reconsider the previous orders of the court of April 22 and August 26, 1916, establishing the rank of the respective portions of Iglesias' claim is unappealable; and (2) that, so far as the decree relates to the dis-

position to be made of the $72,500, the proceeds of the sale of the mortgaged property, and the disposition to be made of the fund represented by Cabrera's certificates, it was not a final decree.

[1] The refusal of the court to grant Iglesias a rehearing as to the status of the respective branches of his claim rested in the discretion of the court and is not the subject of appeal. Roemer v. Bernheim, 132 U. S. 103, 106, 10 Sup. Ct. 12, 33 L. Ed. 277; Willis v. Davis, 184 Fed. 889, 107 C. C. A. 211; Bondholders and Purchasers Iron R. R. v. Toledo, D. & B. R. Co., 62 Fed. 166, 169, 10 C. C. A. 319.

[2] The decree, so far as it relates to the disposition to be made of the $72,500, the sum realized from the sale of the mortgaged property, and of the fund represented by Cabrera's certificates, shows on its face that it was not final, for it is there expressly stated "that the $72,500 produced by the sale of the property subject to the mortgage after deduction of any priority payments as may hereafter be ordered be retained in the registry until all points as to the bonds are determined," and as to the fund represented by the certificates "that this matter be and it hereby is referred to the master hereinafter appointed to determine what part, if any, of the moneys referred to in the receiver's certificates held by said Carlos Cabrera were used for the preservation of the properties of the defendant." An appeal to this court can be taken only from a final decree (Caballero et al. v. Succession of Criado y Blas, 250 Fed. 345, 162 C. C. A. 415), and where the decree is both final and complete (Collins v. Miller, 252 U. S. 364, 40 Sup. Ct. 347, 64 L. Ed. 616, decided March 29, 1920; Oneida Navigation Corporation v. Job & Co., 252 U. S. 521, 40 Sup. Ct. 357, 64 L. Ed. 697, decided April 19, 1920; Groblewski v. Chmicll Co. [C. C. A.] 264 Fed. 325).

The appeal is dismissed for want of jurisdiction, with costs to the appellees.