PENNSYLVANIA CO. FOR INSURANCE ON LIVES AND GRANTING ANNUITIES v. JACKSONVILLE, T. & K. W. RY. CO. et al.

JACKSONVILLE, T. & K. W. RY. CO. v. AMERICAN CONST. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1895.)

Nos. 325 and 331.

1. Costs in Receivership Proceedings—Apportionment.

A subordinate railroad was taken into the hands of a receiver appointed for the controlling company engaged in operating it, and, after being operated for some time by the receiver, was surrendered to its own company. *Held,* that the property so surrendered was liable for its due proportion of the costs of the receivership accruing while it was in the receiver's hands, although the company owning it never became a party to the proceedings until it appeared for the purpose of contesting such liability; and that the apportionment of such cost was a matter resting in the sound discretion of the circuit court.

2. Costs in Equity—Discretion of Chancellor.

The matter of costs lies largely in the discretion of the chancellor, and a decree made by him, reviewing the action of the clerk determining what papers should be formally filed, and the manner of filing, will not be revised on appeal.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

These were appeals taken respectively by the Pennsylvania Company for Insurance on Lives and Granting Annuities against the Jacksonville, Tampa & Key West Railway Company and others, and by the latter company against the American Construction Company, Philip Walters, and others, from a decree adjudicating the matter of costs arising in receivership proceedings.

J. C. Cooper and T. M. Day, for Jacksonville, T. & K. W. Ry. Co.

J. C. Cooper and R. H. Liggett, for Pennsylvania Co. for Insurance on Lives and Granting Annuities.

R. W. Davis, for Florida Southern R. Co.

Before McCORMICK, Circuit Judge, and BRUCE, District Judge.

PER CURIAM. These cases are substantially one, and were heard as such in this court. The subject of the contention is the clerk's costs in a suit in equity in which the railroad and other property of the Jacksonville, Tampa & Key West Railway Company and of the Florida Southern Railroad Company was in the actual

custody of the court, and was operated and controlled by a receiver appointed in the suit in which the costs accrued. Nearly the whole of the costs in controversy were taxed for the filing of the receiver's monthly reports and the accompanying vouchers submitted to the court during the eight months that the receiver was operating the railroads under the orders of the court. The property of the Jacksonville, Tampa & Key West Railway is still in the custody of the court, operated and controlled by another receiver, the successor of one to whom the first receiver delivered the same under the orders of the court. The present receiver and his immediate predecessor were appointed in another suit pending in the same court during the whole time of the continuance of the first receiver's holding. The first receiver was appointed in a suit by a stockholder; the subsequent receiver in a suit by the trustee representing the mortgage bondholders of the Jacksonville, Tampa & Key West Railway Company. When the stockholder's suit was brought, the Jacksonville, Tampa & Key West Railway Company was in the actual possession, and had the control and operation, of the railroad and other property of the Florida Southern Railroad Company. It appears that the property of this company has been surrendered to the Florida Southern Railroad Company, and it is insisted that this company was never a party to either of the equity proceedings referred to, although its property was, as before stated, in the actual custody of the court during the whole period of the first receiver's employment as such, and the two properties were operated by him as one railroad. The Florida Southern Railroad Company did, however, appear in the circuit court in these suits to contest its liability for the costs in controversy; and it was found by that court to be liable and was adjudged to pay a certain portion of 'these costs arising out of the court's operating of its property.

In equity proceedings the matter of costs is necessarily so largely in the discretion of the chancellor that a decree relating to that subject alone is not ordinarily reviewed in the appellate court. In the absence of manifest abuse of that discretion, the appellate court will decline to control its exercise. There is no statute or rule of court prescribing what papers, to the exclusion of all others, shall or may be filed in court. In the absence of such a mandatory limitation, it seems clear that the clerk should and must file all such papers in an equity proceeding as the chancellor orders him to file. And if the clerk, acting on his own judgment and sense of duty or lawful interest, files separately the vouchers accompanying a receiver's reports, when the parties object because the vouchers are not proper papers to be filed in court, or are many of them fastened together in bundles, and should be filed as one paper, or for any other reason, and the issue is brought to the decision of the chancellor, who decides that many of them should be filed, as they have been, separately, marked "Filed" by the clerk, the order or decree announcing that decision is controlling on the clerk, and a sufficient warrant to him for filing such papers. It may or it may not be necessary or judicious to regulate the practice in this regard by a rule of court. There were 15,621 vouchers filed with

the receivers' reports, for which the clerk charged 10 cents a voucher, amounting to $1,562.10. It may be that these vouchers unnecessarily incumber the records of the court, and unduly swell the cost of the proceedings. We express no opinion as to whether these vouchers should have been kept in a safe place among the records of the railroad offices, or filed with the special master, or brought into court and filed with the clerk. As the statutes and rules of court now stand, it was in the discretion of the judge to decide this question, and we do not feel authorized to review his decree in this matter, or in the matter of making a part of the amount of the costs a charge on the property of the railway and railroad companies respectively. We are clear that so much of the proper cost as accrued during the first receiver's operation of the railroads, and grew out of that operation, was and is a proper charge on the property of those corporations, and that, under the conditions in which the costs accrued, the apportioning of them against the respective properties must rest in the sound discretion of the judge of the circuit court. The decrees appealed from are affirmed.