## WILKIE v. MANHATTAN RUBBER MFG. CO.

(Circuit Court of Appeals, Third Circuit. September 13, 1926.)

No. 3437.

1. **Patents ☞328.**

Burnham patent, No. 900,055, for squeeze roll in wool-washing machinery, *held* invalid, under Rev. St. § 4886 (Comp. St. § 9430), for public use more than two years prior to application.

2. **Patents ☞81—Proof of prior public use and sale must be overcome by full and convincing evidence that such use and sale were of uncompleted device or were experimental.**

On proof of public use and sale of an invention more than two years before application for patent thereon, the inference of inventor's intention to abandon his invention to the public is established, unless successfully controverted by full, unequivocal, and convincing proof that such use and sale were not of the completed device subsequently patented, or that they were not absolute and unconditional, but principally and primarily for the purpose of perfecting the invention by tests and experiments.

3. **Patents ☞75.**

The essence of use for purposes of experimentation is a bona fide intent of testing the qualities of the device.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by Robert J. Wilkie against the Manhattan Rubber Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 8 F.(2d) 785.

Harrison F. Lyman and H. L. Kirkpatrick, both of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., of counsel), for appellant.

Emerson R. Newell and H. Dorsey Spencer, both of New York City, for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. This is a suit for infringement of the single claim of Letters Patent No. 900,055, issued to the Stoughton Rubber Company September 29, 1908, on the application of Ira F. Burnham, the inventor, filed February 2, 1907, and it is here on the complainant's appeal from a decree of the District Court dismissing the bill on two of the several defenses; one, that, contrary to Section 4886 of the Revised Statutes (Comp. St. § 9430), the patent was granted after the invention had been in public use or on sale in this country for more than two years prior to the date of the application; and, the other, that the action is barred by the complainant's laches. If the court was right on either ground of dismissal, that ends the case. We have found it necessary to discuss only the first ground.

The complainant purchased the patent from the Stoughton Company in 1922, fourteen years after its grant, and brought this

suit in 1923, fifteen years after the respondent had begun the manufacture of mechanism involving the invention of the patent. If valid, infringement is conceded.

The patent, now expired, was for a squeeze roll in wool washing machinery. For the art, the character of the invention and its history, reference is made to the opinion of the trial court. 8 F.(2d) 785. In this discussion it will be enough to say that rolls of this kind are used to squeeze from wool the liquids used in scouring it. They are very heavy and their operation (under pressure of many tons) is exacting because the wool passing between them is lumpy and of uneven thickness. Roughly described, the roll of the patent was made up of annular sections of vulcanized rubber ranged side by side and anchored to the shaft or axle by radial lugs in staggered positions extending from the shaft into corresponding recesses in the rubber sections. The objects of the invention were to permit the roll thus made of multiple parts to take up the variable pressure to which it was subjected and prevent it slipping. Invention, if any, was in the lug attachment.

[1] Of several transactions involving in different degrees the mechanism of the invention we shall discuss but one. This was a sale by the C. G. Sargent's Sons Corporation to the Pontoosuc Woolen Manufacturing Company of a wool washing machine including three sectional rolls of the patent. The Stoughton Rubber Company, whose president was Burnham, the inventor, manufactured the rubber sections and sold them to the Sargent Corporation. That company built the metal parts and sold the completed rolls. This was in November, 1904, shipment was made in December, 1904, and payment made on January 16, 1905.

On January 26, following, the Pontoosuc Company gave the Stoughton Company an order to recover an old roll. This order the latter company accepted under instructions that it be made like those it had supplied the Sargents. Thus the complainant does not deny that prior to the critical date of February 2, 1905, when, under the statute, the inventor's two year limitation began to run, three rolls had been sold and delivered and one had been ordered. He denies, however, that the first three, though sold, were put in use. We decide this issue against him on written evidence that the machine of which the rolls were a part was in use by the Pontoosuc Company and certain of its mechanism found defective and complaints made to the Sargents before February 2, 1905. Sale and use arose out of the same transaction and were coincidental. When at the trial the complainant was confronted by these sales he said they were not commercial transactions but were made "primarily for experimental purposes." It is just here the issue turns.

[2] This is an issue of fact to be resolved by rules of evidence applicable to cases of this kind, stated at some length by this court in Wendell v. American Laundry Machinery Co., 248 F. 698, 699, 160 C. C. A. 598. Applying these rules to the facts of the case we find the respondent has proved prior use and sale by evidence so clear that it leaves no room for doubt. Thus the inference of the inventor's intention, before the grant of the patent, to abandon his invention to the public is established (and the patent subsequently granted is invalid) unless successfully controverted by full, unequivocal and convincing proof that such use and sale were not of the completed and commercially operative device subsequently patented, or that such use and sale were not absolute and unconditional but were principally and primarily for the purpose of perfecting the uncompleted invention by tests and experiments.

The only evidence for the complainant by which the respondent's proof of abandonment might be contradicted was correspondence between the Sargents and the Stoughton Company after the Pontoosuc order had been accepted and three days before and several days after the rolls were shipped, indicating a disinclination on the part of the former to make more rolls of the design of the Burnham patent unless indemnified by the latter against loss, and a like disinclination on the part of the Stoughton Company to embark more extensively in the business until it should know how the rolls would work. Even here there is no indication that the rolls were sold to the Pontoosuc Company for durability tests or experiments of any kind. The Stoughton Company sold the annular rubber sections to the Sargents absolutely and unconditionally and the Sargents sold the rolls when assembled to the Pontoosuc Company as completed and commercially operative devices, and later the Stoughton Company accepted an order for a fourth roll, all without an intimation to or by any party in the transactions otherwise than that they were straight out sales. Nor did the Sargents follow up the rolls and watch their performance in the hands of the vendee. Nor did the Stoughton Company, except as its salesman, on his rounds, looked at them as he did "any roll (he) sold" to observe their condition. Obviously it takes time to find out how a roll of

new design will work. It may be that neither the Sargents nor the Stoughton Company knew just how rubber shaped and supported as in these rolls would stand up. To that extent the use was problematical rather than experimental. Both parties may have hopefully awaited reports as to the rolls' behavior; yet there is no evidence even of that fact. Certainly time alone would determine how good the new arrangement was, a thing which happens always in the first use of any implement. But a first use is not necessarily an experimental use, and unless it is an experimental use it is a public use when occurring outside the statutory period.

[3] The essence of use for purposes of experimentation is "a bona fide intent of testing the qualities of the" device. Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 257, 8 S. Ct. 122, 31 L. Ed. 141; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Wendell et al. v. American Laundry Machinery Co. et al., 248 F. 698, 699, 160 C. C. A. 598. Such an intent must be evidenced by some affirmation of the fact or by some act from which it may be validly inferred. The first suggestion that the Pontoosuc sales were primarily for experimental purposes was made by the complainant in this litigation about twenty years later. We are constrained to find these sales, when made, were outright business transactions unaffected by any intent, then appearing, to use them for experiments. Against such business transactions a secret purpose to test the invention, one presently existing or later arising in the mind of the inventor, cannot prevail. There must be evidence of the need and of the fact of experimentation to bring it within the exception to the law of prior use and sale. Callahan v. Nesbitt (C. C. A.) 1 F.(2d) 75, 77.

The decree dismissing the bill is affirmed.