## NASH ENGINEERING CO. v. TRANE CO.

District Court, D. Massachusetts. June 7, 1927.

No. 2508.

1. **Patents ⬅➡328—1,091,529, for hydroturbine air pump, held valid, but not infringed, as to claim 6, and valid and infringed as to claim 13.**

Nash patent, No. 1,091,529, for hydroturbine air pump, *held* valid, but not infringed, as to claim 6, and valid and infringed as to claim 13.

2. **Patents ⬅➡64—Earlier patent cannot be construed for purposes of anticipation in light of later knowledge.**

An earlier patent cannot be construed for purposes of anticipation in the light of later knowledge.

3. **Patents ⬅➡36(2)—Commercial success of new combination of old elements, solving long-recognized problem, was strong evidence of invention.**

Extraordinary commercial success of device. consisting of new combination of old elements, which solved a problem long recognized in the art, was strong evidence of invention.

4. **Patents ⬅➡112(3)—Officials' action in granting patent, with prior art before them, creates presumption of validity.**

Action of patent officials in granting a patent, with prior art before them, creates presumption that patent is valid.

5. **Patents ⬅➡328—Jennings reissue, No. 15,-637, for wet vacuum pumping apparatus in steam-heating system, held valid and infringed as to claims 2 and 11, and not infringed as to claim 3.**

Jennings reissue patent, No. 15,637, for wet vacuum pumping apparatus in steam-heating system, *held* valid, and as to claim 2 infringed,

and as to claim 11, as limited to cover substantially the arrangement of parts shown in the patent, infringed, but not infringed as to claim 3.

6. **Patents ⬅➡157(2)—Claims of meritorious patent should be construed to protect patent, if language thereof permits.**

Claims of a meritorious patent should be construed so as to protect patent, if the language thereof permits.

7. **Patents ⬅➡167(1¼)—Claim of patent may be narrowed to what specifications clearly show to be the invention.**

While courts are disinclined to broaden claims of patents beyond their language, even in order to protect meritorious inventions, there is no such objection to narrowing a claim, and restricting its broad language to what the specifications clearly show as the invention.

In Equity. Patent infringement suit by the Nash Engineering Company against the Trane Company. Decree for plaintiff.

Louis W. Southgate and Chas. T. Hawley, both of Worcester, Mass., for plaintiff.

Arthur T. Holmes, of La Crosse, Wis., Samuel D. Elmore, of Boston, Mass., and Fred L. Chappell, of Kalamazoo, Mich., for defendant.

MORTON, District Judge. This is a suit for the infringement of three patents, viz. to Nash for displacement structure, No. 953,-222, dated March 29, 1910; to Nash for pump and air compressor, No. 1,091,529, dated March 31, 1914; and the reissue patent to Jennings, No. 15,637, dated June 26, 1923.

It was heard at length in open court. At the conclusion of the arguments I gave an oral judgment, holding the first two patents valid and infringed. Decision on the Jennings patent was reserved. Subsequently, but before any decision had been made on the last patent, the defendant moved to reopen in order to set up a newly discovered German patent to Blank, No. 56,529, dated May 20, 1890. The allowance of this motion vacated the previous judgment, and to some extent required a re-examination of the whole case. Upon the admission of the German patent in evidence, the plaintiff conceded for the purposes of this suit that the first Nash patent was untenable in the face of it, and withdrew that patent. This leaves the suit as one on the second Nash patent and the Jennings patent. My oral opinion, much of which was devoted to the first Nash patent, is to be considered as withdrawn, and the present opinion as covering the whole case as finally presented.

[1] As to the second Nash patent, this pat-

ent is upon a hydroturbine air pump. The device is described in the opinion of the Circuit Court of Appeals in a suit brought by this plaintiff against one Cashin (13 F.[2d] 718), so that a detailed description of it here is not necessary. The claims now in suit, the sixth and thirteenth, are designed to protect one feature of the invention, viz. the sealing ring of water. In the center of the second Nash pump was atmospheric pressure, and at the inlet was a partial vacuum. The tendency would be for air to suck back along the running edges, between the rotor and the casing, and thereby impair the operation of the pump. To prevent that, Nash carried out the casing into a circular recess corresponding to the rim of his rotor, adapted to catch and hold a ring of spinning water over the joint between the casing and the rotor. It undoubtedly greatly aids in the operation of the pump by preventing leakage of air.

[2] The only patents which are urged as anticipating this idea are the first Nash patent, the Lake (English) patent, and the new German patent. In my opinion, neither of the two first named does so, and this is sufficiently clear not to require the difficult and lengthy description of the devices which would be necessary to a discussion of the point. The German patent shows a rotor having buckets around the circumference, the sides of the buckets run fairly close to the casing, and the casing has circular recesses. These recesses are not, however, concentric with the rotor. There is what appears to be a substantial clearance between the rotor and the casing, and this clearance is functional, designed to permit the mercury, which is the operating liquid, to pass through it under certain conditions. There is no mention in the patent of any sealing ring, such as is shown in the Nash device. If there be such a ring, it is accidental, and it must have a traversing motion in and out of the side of the rotor as the latter revolves. In both the Nash patent and the defendant's pump, the recess (or equivalent flange) which catches the water is concentric with the rotor and makes with it a close running fit. I am confident that the German device would require reconstruction with the sealing ring in mind to cause such a ring to exist and function with water as the liquid. There is no evidence that anybody before Nash had any such idea, and an earlier patent cannot be construed for purposes of anticipation in the light of later knowledge. See Hirschy Co. v. Wisconsin, etc., Co. (D. C.) 18 F.(2d) 347, at page 355. On all the evidence, I find and rule that the claims in suit are valid.

Turning to the defendant's pump, it is a hydroturbine embodying the underlying principles of the Nash inventions. I held it to be an infringement of the first Nash patent. The interior of its rotor, through which it discharges the air, is open to atmospheric pressure; the inlet is exposed to the partial vacuum of the heating system. The inner sides of the casing are flat, having no recess like those of the patent in suit; but from these flat sides there extend inward C-shaped flanges, integral with the casing, which are concentric with the rotor and make a close running fit with the inner side of its rim. The clearance between the rim and the flange corresponds with the clearance between the rim and the casing in the second Nash patent. The plaintiff contends that a whirling ring of water forms over this joint, which functions like the sealing ring of the patent, to prevent air from leaking back through the pump. The defendant denies that this is so.

In claim 6, the ports are explicitly specified by letter ($e^5$) which implies a construction closely assimilating that of the patent; i. e., ports through the casing head intermittently opened to the "pockets" on the rotor. This construction is not used in the defendant's device. At the conclusion of the original arguments I was of opinion that this difference was unsubstantial, and that the claim was infringed, and I so expressed myself. But upon further reflection I think that I was in error on this point, and that, as the ports are essential to the operation of the device of the patent and are clearly included in the claim, the absence of them in the defendant's pump avoids infringement of this claim.

Claim 13 reads as follows:

"13. In a device of the character described, the combination of a wheel having pockets extending from a central ring portion, said wheel having a hollow interior combined with a case chamber including a head having a recess to receive a rotating fluid, said head also having a port located wholly within the boundary of said rim portion and communicating with said hollow (sic) interior so as to retain a portion of the revolving fluid in the interior of the wheel to form a joint between said wheel and the case chamber wall."

The only elements in this claim which require discussion are (1) whether the defendant's rotor is "combined with a case chamber including a head having a recess to receive a rotating fluid," and (2) whether said head also has "a port located wholly within the boundary of said rim portion and connecting

with said hillow (sic) interior, so as to retain a portion of the revolving fluid in the interior of the wheel to form a joint between said wheel and the case chamber wall."

As to (1): It is said for the defendant that the casing head of its pump has no "recess." That is true in the strict sense. As before stated, Nash made a recess by carrying out the head or side of the casing in a little jog, which catches and holds the sealing ring of water. The defendant does not do that; it makes the inside of the casing straight, and extends from the inner face of it, integral with it, a circular C flange, just under the rim of the rotor, so that there is a close running fit between the rim and the flange. On one side of this joint is atmospheric pressure, and on the other side a partial vacuum. The proper operation of the pump requires that air leakage at this point shall be controlled. The solid web of the wheel throws out and keeps a whirling ring of water over the joint between the rim of the wheel and this flange on the casing, and prevents leakage there. It is precisely the idea of the claim, carried out in substantially the same way. The defendant's construction is in my opinion the equivalent of that specified in the claim. See N. Y. Scaffolding Co. v. Chain Belt Co., 254 U. S. 32, 41 S. Ct. 21, 65 L. Ed. 116. The defendant insists that there is no whirling ring of water in its pump; that the break in the C flange would permit such a ring to escape. It is a sufficient answer to this contention to point out that the defendant has clearly shown such a sealing ring in its advertising cut of its pump in operation. In my opinion that cut correctly shows how the pump works.

As to (2): In the patent there are, as already noticed, ports in the casing heads which are intermittently opened and closed. They are located near enough to the center to be inside the ring of sealing water, so that it does not escape through them. In the defendant's structure there is a central opening through the casing of less diameter than the C flange. The casing head and the C flange retain the ring of sealing water as above described; and the air is discharged through the round opening in the center of the casing head. While the question is perhaps not free from doubt, I am of opinion that in this claim the word "port" is used in the sense of a discharge (or inlet) opening through the casing head located inside the sealing ring of water.

It follows that this claim is infringed.

The remaining patent in suit is that to Jennings, reissue No. 15,637, dated June 26, 1923, for wet vacuum pumping apparatus, original application filed June 15, 1917.

This patent has been carefully considered by my brother Lowell and by the Circuit Court of Appeals for this circuit in the previous suit here, already referred to, by the present plaintiff against one Cashin. 3 F.(2d) 686, 13 F.(2d) 718. The art to which the patent relates, and the general state of that art at the time when the patent was applied for, are clearly described in those opinions and need not be restated. Vacuum steam-heating systems were known as far back as 1882, when Williames took out a patent which may have been the pioneer in this field. See opinion by Judge Coxe, in Williames v. Barnard (C. C.) 41 F. at page 359. During the 35 years which passed before the Jennings application, such systems, notwithstanding their great advantages, do not appear to have gone into very general use. One reason for this apparently was that there was no satisfactory apparatus for maintaining the vacuum and handling the return water. Many efforts were made to overcome this difficulty, but without success. The prior art is clearly stated by Stannard and Kimball in their testimony in the Cashin Case. When Jennings entered the field he found the theory well understood and the piping arrangements well worked out, including a receiving chamber on the returns to separate the water from the air. Various kinds and arrangements of pumps, water and air, had been tried; but nothing satisfactory had been developed. It occurred to him to utilize a Nash pump as an exhauster in combination with a rotary water pump on a single shaft driven by an electric motor, and to provide automatic controls for starting and stopping the combination, operated either by an accumulation of water or by a decrease of vacuum in the receiver chamber. This arrangement proved successful. The Court of Appeals has found that it "revolutionized the vacuum steam-heating art." 13 F.(2d) 718. The defendant's apparatus is a bodily appropriation of the Jennings idea.

The defendant's principal contentions are (1) that the Jennings patent is invalid for lack of novelty or invention, in view of the prior art; and (2) that it is void because the invention described therein was on sale more than two years before the application was filed. As to (1): All the elements which Jennings brought together were old; i. e., vacuum systems were old, a separating tank (or chamber) in such a system with an air pump and a water pump was old, rotary

pumps for both air and water were old, and in condenser practice both had been mounted on a single shaft and run by the same motor, and automatic control of the pumps in a vacuum system was old.

[3] All this being so, I am still of opinion that the steps which Jennings took involved invention. I am led to this conclusion in part by the immediate and extraordinary success which it achieved in connection with the circumstances under which this success was obtained. The problem which he solved had long been recognized, and the importance of it appreciated. On the solution of it the broad commercial success of vacuum steam heating with the great advantages which it affords depended. But the problem remained unsolved until he accomplished what others had not been able to do. In the relatively short time his apparatus has been on the market, some 17,000 installations have been made and it has "revolutionized" the art. It is well settled that this is strong evidence of invention. "But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction, fatal to the grant." Shiras, J., in Keystone Mfg. Co. v. Adams, 151 U. S. 139 at page 144, 14 S. Ct. 295, 297 (38 L. Ed. 103).

"Where the court has to deal with a device which has achieved undisputed success and accomplishes a result never attained before, which is new, useful, and in large demand, it is generally safe to conclude that the man who made it is an inventor." O'Rourke Engineering Co. v. McMullen, 160 F. 933, 938 (C. C. A. 2d). See, too, to the same effect Warren Steam Pump Co. v. Blake & Knowles Steam Pump Works, 163 F. 263 at page 280 (C. C. A. 1st), and Hirschy Co. v. Wisconsin, etc., Co. (D. C.) 18 F.(2d) 347. Why had not somebody else brought together these old elements and turned failure into success? The defendant says the arrangement was obvious. But the defendant and its predecessors have been long in the heating business, and none of their engineers ever overcame the difficulty. They meet the plaintiff's competition by copying his apparatus.

On the face of the prior art nothing appears to have been done by Jennings but to rearrange old devices; the paper case is strong against the plaintiff. But the facts demonstrate that there was something not obvious, which escaped others, and which Jennings saw. It is not easy to say what it was, and, on the decisions just referred to, perhaps it is not necessary; success in cases of this character being itself strong proof of invention. Keystone Mfg. Co. v. Adams, supra, at page 144 (14 S. Ct. 297). A similar difficulty has been felt in other cases. It was rather picturesquely expressed by Judge Hough in Marconi Tel. Co. v. De Forest Radio Co. (C. C. A.) 243 F. 560, where he said: "The point is not capable of much argument, the appeal is to a kind of conscience, and the court or jury intuitively and conscientiously feel either that invention is absent, or that something akin to genius is displayed in the visible, tangible result of the mental concept." The same point of view is indicated in Western Electric Co. v. La Rue, 139 U. S. 601, 11 S. Ct. 670, 35 L. Ed. 294, and National Cash Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 502, 15 S. Ct. 434, 39 L. Ed. 511.

Perhaps what Jennings recognized was the requirements for each element and the essential unity of the apparatus, as a whole; i. e., that each of the various elements must not only perform its own function satisfactorily, but must fit into the combination, and, beyond this, that out of a wide choice of parts and arrangements he selected those which could be so combined as to do the work required in the ordinary installation. This at least affords an adequate explanation of his extraordinary success, and why the defendant should so slavishly copy him. Jennings' testimony supports this view, and it is also plainly indicated in some of the contemporaneous letters. In April, 1915, the Chicago Pump Company wrote to the plaintiff: "We have spent quite a bit of time with the pump that we have purchased from you, in trying to make it an acceptable article to the architect, and with but partial success. The pump that we have is still in our possession, and we are trying to mount it up in some style, so that it will be acceptable to the architect," etc. The letter continues: "If we devote enough time and money to your pump, we believe we could arrange an installation so that it would be acceptable to the architect, and at the same time could be installed by steam fitters without any difficulty; i. e., make the entire outfit one complete self-contained unit." In a letter to the Chicago Pump Company of July 2, 1915, the plaintiff said: "We found it necessary to design a complete line of volute water pumps, to go with our hydroturbine, as we

could not purchase anything for the heads we had to deliver against, at standard motor speed." These letters, it seems to me, both recognize what I have referred to as the "essential unity" of the apparatus. The one from the Chicago Pump Company shows that to its engineers, at least, the solution of the problem which Jennings solved was not obvious. What was true of these engineers was, on the evidence, true of the trade generally. Even if, as the defendant contends, the first suggestion for the use of a Nash pump came from Weil, that would not invalidate Jennings' patent. Weil took no steps to protect his idea, if his it was, but mentioned it to Jennings in order that the latter might use it, if he saw fit to do so.

[4] In my opinion the step which Jennings took involves patentable invention of not a low order. I am supported in this conclusion by the fact that, though my brother Lowell and the Circuit Court of Appeals had before them in the Cashin Case substantially the same evidence of the prior art as is now before me, neither opinion contains any intimation that this patent was regarded as doubtful or unmeritorious. Moreover, the point was fully considered in the Patent Office. And, where that has been done, the decision of the office carries weight. Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79, 82; Diamond Rubber Company v. Consolidated Rubber Tire Company, 220 U. S. 428, 434, 31 S. Ct. 444, 55 L. Ed. 527.

As to (2): Jennings filed two applications based on the invention covered by this patent—one on June 5, 1915; the other on June 15, 1917. The earlier one lapsed for nonprosecution. The later resulted in the patent of which the reissue is in suit.

In the first part of 1914 the plaintiff furnished an apparatus consisting of a Nash pump to act as an exhauster and a centrifugal water pump to the S. D. Warren Company to be used in connection with the steam-heated drying rolls on a paper-making machine. This is apparently the first use of the Nash pump in connection with steam heating, and it was a use obviously very different from heating buildings. In the plaintiff's pamphlet of December 1, 1914, nothing was said about the use of the Nash pump for the latter purpose. Towards the end of 1914 the Chicago Pump Company inquired of the plaintiff about the Nash pump for vacuum steam-heating purposes. It wrote to the plaintiff in January, 1915, "We have been waiting patiently for some time now for a reply to our inquiry for data on the vacuum pumps," etc.; to which the plaintiff replied,

"We were awaiting the result of a test on a small water pump." Evidently one of the points involved was that the air pump and the water pump must each operate at the speed of commercial electric motors and start easily; and under date of January 19th, the Chicago Company wrote that, if Nash would send the vacuum pump, they might be able to develop a small centrifugal pump which would operate at the motor speed. The plaintiff sent forward a Nash pump in February of that year, with sketches showing how it was to be connected up. The sketches showed belt-driven apparatus, quite unsuitable for general use. The correspondence indicates that the apparatus was far from perfected. Under date of April 9, 1915, the Chicago Pump Company wrote to the plaintiff that the owner (of the building) would not accept the pump, because it made too much noise, and other difficulties are referred to. This letter, which has already been quoted from, indicates clearly that as late as that date the invention was far from perfected. According to Jennings' testimony, it was not until 1917 that he hit upon the solution of the final difficulty.

[5] On all the evidence I am not satisfied that apparatus embodying the invention of the patent was sold before June 15, 1915, which upon this issue is the decisive date. On all the evidence, I find and rule that the Jennings patent is valid.

[6] The claims now in suit are 2, 3, and 11; the others have been withdrawn. Claim 2 is for the combination in a vacuum steam-heating system of (1) a separating chamber; (2) a Nash type gas pump; and (3) a water pump. Claim 3 is for the same basic elements, narrowed by provisions that the gas pump shall retain all the water in the system and the water pump shall return the water of condensation to the boiler. Obviously claim 2 is infringed; the question is as to its validity. As has been said, Jennings' invention was highly meritorious and of patentable character. This being so, it is well settled that the claims should be so construed as to protect it, if the language permits such a construction. Cases supra. Whether the mere substitution of a Nash type pump as the exhausting apparatus in a vacuum steam-heating system, in place of the pumps previously employed, amounted to invention, is a close question. The proper location and connections for such a pump involved certain difficulties which had to be solved. The use of it overcame at one step several of the obstacles which had interfered with the general adoption of such systems; e. g., it eliminat-

ed valves, pistons, and packings, it avoided the trouble caused by water vapor condensing in the air pump, and by water which passed over into the air pump, and it supplied an air pump, which started easily and operated at motor speed. It was much more than the substitution of one pump for another; it effected a change in the system as a whole, which made it much more widely useful. The history of the art shows that it was not an obvious step. I incline to the view, which was taken by the Patent Office, that it amounted to invention.

[7] It is, however, unnecessary to decide this question, because, even if these claims be given the narrowest possible construction, and held to cover only a Nash type pump, in combination with a separating chamber and a water pump substantially like those of the patent, arranged in substantially the same way, the defendant's apparatus is so clearly a copy of the plaintiff's arrangement that it would still infringe. While courts are disinclined to broaden claims beyond their language, even in order to protect meritorious inventions, there is no such objection to narrowing a claim and restricting its broad language to what the specifications clearly show as the invention. See Chism Mail Box Co. v. S. H. Couch Co., 19 F.(2d) 357 (C. C. A. 1st, May 17, 1927), Mitchell v. Tilghman, 19 Wall. 287, at page 391, 22 L. Ed. 125; the point not being affected by the later decision in 102 U. S. 707, 26 L. Ed. 279. To such a construction, at least, Jennings is, I think, clearly entitled. On all the evidence I find and rule that claim 2 is valid and infringed.

Claim 3.—Jennings' apparatus was so arranged that all the water which came through the return pipe was retained in the system and returned to the boiler, including the water which worked its way through the gas pump. This claim is directed to this feature of the invention. In the defendant's apparatus, "the discharge from the Trane air pump is not back to the receiver, but into the air, so that any water that is entrained by the air pump is discharged and lost or wasted." Defendant's Brief, p. 50. This being so, the claim under discussion is not infringed.

Claim 11.—The defendant strongly urges that this claim is but for an aggregation of old parts, producing an old result; that, except for the substitution of electricity for steam power, it is precisely readable on old systems. The commercial value of the arrangement is shown by the fact that the defendant has adopted and used it in about 25 per cent. of its installations. Apparently out of many possible combinations of controlling mechanism, Jennings has brought together those which make the best unit. The controlling mechanism is an important feature of any automatic apparatus, and this, as devised and used by Jennings, has, I do not doubt, contributed to his commercial success. The legal considerations which this claim involves are the same as those already discussed. Construing it as limited to cover substantially the arrangement of parts shown in the patent, it is, in my opinion, valid, and it is infringed.

Decree accordingly.