## TRANE CO. v. NASH ENGINEERING CO.

Circuit Court of Appeals, First Circuit.   March 26, 1928.

No. 2181.

**1. Patents ⚖️314—Issues raised under evidence of anticipation, in patent infringement suit, are issues of fact.**

Issues raised by evidence of prior art and anticipation in patent infringement suit are issues of fact, to be determined on the evidence.

**2. Patents ⚖️112(1)—Presumption of validity of patent is strengthened by decision in its favor after appeal to Examiners in Chief.**

Presumption of validity is strengthened, where patent is disputed during its passage through Patent Office, and is sustained after appeal to Board of Examiners in Chief.

**3. Patents ⚖️16, 35, 118—Essence of patent is invention, which is frequently best demonstrated by actual experience; "patent" is description of invention, and must be reasonably adequate to warn public of nature and extent of monopoly claimed.**

In determining validity of patent, the essence of the matter is the invention, which is frequently best tested and demonstrated by actual experience, though description must be reasonably adequate in order to warn public and competitors of nature and extent of the monopoly claimed; a "patent" being the description of the invention in words and drawings.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent (of Invention).]

**4. Patents ⚖️36(2)—Doubts as to invention disappear where claim has proved successful.**

Where success is proved to have flowed from particular claim in patent, doubts arising from papers alone disappear in determining claim's validity.

**5. Patents ⚖️328—Reissue 15,637, claim 2, for pump combination in vacuum steam-heating system, held valid and infringed.**

Jennings reissue patent No. 15,637, claim 2, for gas pump combination in vacuum steam-heating system, held valid, not anticipated, and infringed.

**6. Patents ⚖️324(5⅝)—Findings that prior public use, invalidating patent, was not shown, may not be disturbed, in absence of extraordinary record.**

Findings of judge, "on all the evidence," that rights to patent were not shown to have been lost by prior sale, may not be disturbed by holding that prior use was proved beyond reasonable doubt, in absence of extraordinary record.

**7. Patents ⚖️167(1¼)—Patent claim must be construed with specification, and limited narrowly.**

Claims of patent must be construed with specification, and narrowly limited.

**8. Patents ⚖️328—Reissue 15,637, claim 11, for pumping apparatus in vacuum heating system, held valid.**

Jennings reissue patent, No. 15,637, claim 11, for pumping apparatus in vacuum steam-heating system, held valid.

**9. Patents ⚖️328—1,091,529, claim 13, for pump for vacuum steam-heating system, held valid and infringed.**

Second Nash patent, No. 1,091,529, claim 13, for sealing ring in pump, forming part of vacuum steam-heating system, held valid and infringed.

**10. Patents ⚖️314—Requirement that defendant pay $3,000 as condition to reopening patent infringement suit to introduce prior patent previously known to it, which it failed to plead, held not error.**

Court's imposition of terms, requiring defendant's payment of $3,000 as condition to reopening patent infringement suit, held not error, where purpose of reopening was to set up prior patent previously known to defendant, which it failed to show at trial, especially where plaintiff had been put to great expense in preparing and trying the issues under the patent, and where plaintiff, who prevailed, was allowed only 60 per cent. of taxable costs.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Patent infringement suit by the Nash Engineering Company against the Trane Company. Decree for plaintiff (20 F.[2d] 439), and defendant appeals. Affirmed.

See, also, 22 F.(2d) 868.

Fred L. Chappell, of Kalamazoo, Mich., and Arthur T. Holmes, of Lacrosse, Wis. (Samuel D. Elmore, of Boston, Mass., on the brief), for appellant.

Louis W. Southgate, of Worcester, Mass. (Charles T. Hawley, of Worcester, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In this patent infringement suit, the District Court (Morton, J.) held claims 2 and 11 of the Jennings reissue patent (No. 15,637, granted June 26, 1923) and claim 13 of the second Nash patent (No. 1,091,529, granted March 31, 1914) valid and infringed. The main issue is the validity of claim 2 of the Jennings patent, covering a combination of old elements for a wet vacuum pumping apparatus and reading:

"The combination, with the separating chamber of a vacuum steam-heating system, of a rotary gas pump employing water for its pumping action and having a rotor provided with displacement chambers, said

pump being connected and operating to exhaust the gas from the system by the suction and displacement action of the water in said chambers, and a water pump connected and operating to withdraw water of condensation from the separating chamber."

This patent was the basis of the suit by the present plaintiff against Cashin and others in 3 F.(2d) 686 (D. C.), and 13 F.(2d) 718 (C. C. A.), disposed of in both courts on the issue of infringement only. But both courts assumed, without expressly finding, the patent valid. The history of the art and the apparatus involved. were described in both opinions in considerable detail. The bulky Cashin record is by stipulation a part of the present record; it contains an elaborate attack on the validity of claim 2 of the Jennings patent.

[1] The present case was tried at length in open court, with a full presentation of the operative apparatus of both plaintiff and defendant and all sorts of illustrative drawings and models of the devices used. After full trial, the case was reopened to permit the defendant to put in evidence an alleged German patent of May 20, 1890; further evidence was received, and the case fully reargued, orally and on briefs. Judge Morton's final opinion of June 7, 1927, is in 20 F.(2d) 439 (D. C.). The course of the trial gives more than usual weight to this obviously careful and considered opinion of the learned and experienced judge, whose findings appellant now asks us to hold unwarranted. His frequent questions to experts and counsel show extraordinary acumen in grasping the many rather puzzling functional aspects of the devices before him—devices evoking from expert engineers views widely diverse. This is the sort of case in which the trial judge is in a substantially better position to reach sound and confident conclusions than is an appellate court. Judge Morton had, for days before him, the apparatus of both sides, and all the illustrative models and drawings, with trained experts—including counsel of caliber and large experience in patents—to whom he could and did present his doubts and difficulties for immediate solution. We have no equal resource, in the printed record and mass of models and drawings. And the issues here are of fact, to be determined on the evidence. Eibel Co. v. Paper Co., 261 U. S. 45, 52, 43 S. Ct. 322, 67 L. Ed. 523; Kimball v. Noesting (C. C. A.) 262 F. 148.

[2] The original Jennings patent (No. 1,-447,854, issued March 6, 1923, on an application filed June 15, 1917) had, as pointed out in the Cashin Case (C. C. A.) 13 F.(2d) 718, a long and rather stormy passage through the Patent Office. The Primary Examiner was critical, and cited against the applicant some of the prior art patents now relied upon. After appeal to the Board of Examiners in Chief, the conclusion was in favor of Jennings' chief claims. Under these circumstances, the presumption of validity (Diamond Rubber Co. v. Con., etc., Tire Co., 220 U. S. 428, 434, 31 S. Ct. 444, 55 L. Ed. 527) is strengthened. Walker on Patents (5th Ed.) § 491; Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79, 82. Our approach is thus to a problem which has already been carefully considered by two tribunals, having the same duty as has this court: To protect the public against illgrounded, private monopoly, and to secure to the inventor of a new and useful device the reward contemplated by our patent law.

The history of the art of vacuum steam heating and Jennings' remedy for the difficulties encountered, as stated in the three previous published opinions cited, may be regarded as here incorporated by reference. As this will be the fourth published opinion, dealing (in large part) with the same apparatus and devices, it is unnecessary here to repeat the descriptions and explanations otherwise essential. This opinion should be read with the previous opinions, cited supra.

It is certainly significant that, with Williames' invention at least as early as 1882 (Williames v. Barnard [C. C. A.] 41 F. 359; Warren, Webster & Co. v. Dunham Co. [C. C. A.] 181 F. 836), of vacuum steam heating as a great improvement over circulation by pressure from the boiler, 35 years elapsed before the problem was really solved. The old pressure system, with its disagreeable "water hammering" and many other defects described in the record, had, all these years, remained in almost general use. Engineers merely groped for a better result. Compare The Barbed Wire Patent, 143 U. S. 275, 283, 12 S. Ct. 450, 36 L. Ed. 154; Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Con. Valve Co. v. Crosby Valve Co., 113 U. S. 157, 179, 5 S. Ct. 513, 28 L. Ed. 939.

Even more significant is the immediate and substantial success achieved by the Jennings combination; due, as the record plainly shows, to its intrinsic merit, and not to "advertising and other energetic business methods." Hubbell, Inc. v. Gen. Electric Co. (C. C. A.) 267 F. 564, 569. When Jennings, about 1914 or 1915, began experimenting with a combination of the Nash pump in a

vacuum steam-heating system, the Nash Company was a small, struggling concern, with but meager equipment of plant, staff, and capital. It was in no position to push to success, in a highly competitive field, anything but a superior product. But before the patent (applied for in June, 1917) was granted in March, 1923, over 5,000 of these combinations had been installed in the United States alone. This fact, as pointed out in our opinion in the Cashin Case, presumably helped to convince the Patent Office that Jennings had made a real invention. By November, 1926, over 17,000 of these systems had been installed. This is strong evidence, from market overt, of the value of this combination; it met a long-felt want. As pointed out by Judge Morton (20 F.[2d] 439), the defendant and its predecessors had long been in the heating business and none of their engineers had ever solved the problem. David v. Harris (C. C. A.) 206 F. 902; Kurtz v. Belle Co. (C. C. A.) 280 F. 277. Jennings substantially changed the art of vacuum steam heating.

This case is, in that aspect (and in fact in all other aspects), much clearer than the Eibel Case, 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. In that case the Supreme Court held it invention, overruling this court, to increase the pitch of the old Fourdrinier paper machine, so as to speed up the operation. On paper, this was nothing but an application of the law of gravity to make fluid stock move more rapidly. But the court pointed out (Taft, C. J.) that speed had long been the quest of paper manufacturers, and that Eibel's scheme for getting it had been widely adopted. The conclusion in favor of Eibel rests mainly (if not entirely) on the success of his simple method of adjusting the old machine. He provided no new combination, as Jennings did. The Eibel Case certainly admonishes this court to give great weight to the practical results from a claimed invention; to look beyond the paper expression to the state of the art, before and after an alleged invention which is tested in actual practice. Dubilier Condenser Corp. v. N. Y. Coil Co. (C. C. A.) 20 F.(2d) 723, 725; Minerals Separation v. Hyde, 242 U. S. 261, 270, 37 S. Ct. 82, 61 L. Ed. 286.

[3, 4] An invention is a real thing; a patent is the description of it in words and/or drawings. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800. The description must be reasonably adequate, in order to warn the public and competitors of the nature and extent of the monopoly claimed. But the essence of the matter is a new and useful reality, frequently best tested and demonstrated by actual experience. Smith v. Goodyear Co., 93 U. S. 486, 495, 23 L. Ed. 952; Marconi Co. v. DeForest Co. (C. C. A.) 243 F. 560, 564; Kurtz v. Belle Co. (C. C. A.) 280 F. 277. Of course, commercial success alone is no safe guide. Boston, etc., Co. v. Automatic (C. C. A.) 276 F. 910. But when, as in this case, success is proved to have flowed from the claim in suit, doubts arising from the papers alone disappear. Hubbell Co. v. Gen. Electric, supra. [5, 6] We have no doubt that the court below was right in holding that Jennings made an invention, sufficiently described in claim 2, supra.

The defendant urges that, even if Jennings did invent, he lost his rights by prior sale and use. We have carefully considered the elaborate and able argument on this point of defendant's learned counsel, and the evidence relied upon. We need not review it in detail. It is enough to say that we are fully in accord with the conclusions of the trial judge, who "on all the evidence" was not satisfied that apparatus embodying the invention was sold before June 15, 1915, which, upon this issue, is the decisive date. To hold prior public use proved beyond a reasonable doubt (Wendell v. Laundry Mach. Co. [C. C. A.] 248 F. 698, 699, 670), in the face of this finding of the learned District Judge, would require a most extraordinary record. Compare Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821; The Barbed Wire Patent, 143 U. S. 275, 286, 12 S. Ct. 443, 450, 36 L. Ed. 154; Wilkee v. Manhattan Co., 14 F.(2d) 811; Corrington v. Westinghouse Co. (C. C. A.) 178 F. 711, 715. The weight of evidence is plainly against the defendant.

It may be worth while to add that Jennings' dealings with the Chicago Pump Company in 1914 and 1915 (defendant's main reliance for its contention of prior use and sale), in the attempt to put the Nash pump to use for vacuum steam-heating purposes, show that his concept was then far from perfected, and also emphasize the essence of the real invention, viz. a delicate combination of old elements to produce this new, and long-sought, useful result. Jennings successfully established a new functional relationship between the old constituent elements of his combination. Cf. Roberts, Patentability, p. 47. No obvious adaptation would so long have puzzled and thwarted competent and experienced business men and engineers, seeking to widen their market in populous communities, where artificial heat is essential for several months of the year.

Rather faintly defendant contends that its apparatus does not infringe. Judge Morton found it to be "a bodily appropriation of Jennings' idea," and adds that Jennings' extraordinary success in adapting his combination to the long-existing problem affords "an adequate explanation of his extraordinary success, and why the defendant should so slavishly copy him."

It is true that defendant uses the Trane pump, and not the Nash pump. But the court below was plainly right in rejecting defendant's contention that this pump was not, for present purposes, the full equivalent of the Nash pump. It uses, as does the Nash pump, water as pistons, moving in and out of the displacement chambers of a rotating wheel, in an elliptically shaped chamber. The fact that the air inlet and outlet are arranged somewhat differently is for present purposes immaterial. Infringement is clear enough.

[7, 8] We come now to the attack on claim 11, held valid and infringed. The claim reads:

"A liquid and gas pumping apparatus, including in combination a receiver for liquid and gas, an electric motor, a liquid pump and a gas-exhausting pump connected to be operated by said motor, said pumps having their inlets in communication with the receiver, a break in the electric circuit to the motor, and means to close said break when the pressure or quantity of liquid in the receiver exceed predetermined amounts."

This is a minor combination of old elements particularly adapted to the special combination of Jennings. The essence is the idea of, using a *single electric* motor to drive both pumps in the described combination for a vacuum steam-heating system, and to control the motor both from the pressure and from the quantity of liquid in the receiver. The claim must, of course, be construed with the specification and limited rather narrowly. So construed, we cannot say the court below was wrong in holding it valid. Defendant uses this combination in about 25 per cent. of its output; infringement is proved.

[9] The third claim held valid and infringed is claim 13 of the second Nash patent, reading:

"In a device of the character described, the combination of a wheel having pockets extending from a central rim portion, said wheel having a hollow interior combined with a case chamber, including a head having a recess to receive a rotating fluid, said head also having a port located wholly within the boundary of said rim portion and communicating with said hollow interior, so as to retain a portion of the revolving fluid in the interior of the wheel to form a joint between said wheel and the case chamber wall."

This covers an element in the Nash pump, referred to as the sealing ring, which functions as a sort of joint between the rotor and the case chamber wall. Defendant's counsel has failed to convince us that the court below erred in holding this claim valid and infringed.

[10] The defendant complains of the terms imposed by the court as a condition for reopening. The suit as filed covered claims in the first Nash patent, No. 953,222, issued March 29, 1910. After a full trial, resulting in a finding orally from the bench in favor of the plaintiff on claims 6 and 7 of this first Nash patent, defendant moved to reopen, in order to set up a German patent—or an abandoned application therefor—dated May 20, 1890. This prior publication was known to the defendant weeks before the trial; but it failed to plead it. The motion was allowed on the defendant's paying $3,000. The plaintiff thereupon, for the purposes of this case, conceded that this first Nash patent (which expired on March 29, 1927) could not be sustained, and withdrew it from the case. It is plain, as the court below in effect found, that the plaintiff had in good faith, and reasonably, incurred large expense in the preparation and trial of a suit on a patent which, on evidence then known to the defendant, but unknown to the plaintiff, was invalid. Why defendant's learned counsel did not promptly plead it, and thus end, pro tanto, the controversy, we find unexplained. Plaintiff estimated its expense in preparing and trying the issues under the patent at $10,-000. The court found that it had "been put to additional expense of at least $3,000 by reason of the defendant's failure seasonably to set up the German patent." Whether the whole matter of reopening and the terms therefor were or were not entirely within the discretionary powers of the District Court (which we do not decide), it is enough to observe that the decision was eminently just and fair, especially when considered with the ruling that the prevailing plaintiff recover only 60 per cent. of the taxable costs to the date of the decree—which is challenged by the defendant's fourteenth assignment of error, though not argued.

See Roemer v. Bernheim, 132 U. S. 103, 106, 10 S. Ct. 12, 33 L. Ed. 377; Iglesias v. Banco, etc. (C. C. A.) 268 F. 479. Penn. Co. v. Jacksonville (C. C. A.) 66 F. 421.

The decree of the District Court is affirmed, with costs to the appellee.