798

## FINUCANE v. SWIMMER et al.

District Court, E. D. New York.
Jan. 23, 1930.

Moses & Nolte, Albert C. Nolte, and James N. Catlow, all of New York City, for plaintiff.

Hoguet & Neary, Daniel L. Morris, and M. S. Rupert, all of New York City, for defendants.

SLICK, District Judge.

Plaintiff sues defendants and alleges infringement of patent No. 1,676,485 for a leader-pipe strap, and prays for an injunction and accounting. The patent sued on was granted to plaintiff July 10, 1928.

Defendants claim, first, that plaintiff is estopped to claim a patent on a one-piece strap because in the Patent Office he waived this claim or acquiesced in a ruling disallowing the same; second, that the patent in suit is invalid, (a) because the claims define nothing more than that which was practiced in the prior art, (b) because the claims are anticipated by Defendants' Exhibit A, and (c) because the patent in suit defines nothing patentable over the prior patented art; and, third, that, while admitting that, if the patent is valid, defendants' strap, Plaintiff's Exhibit I, is within the scope of the claims of the patent, and that defendants infringe the patent in their sale of this strap, they deny that defendants' straps, Plaintiff's Exhibits II, III, and IV, are within the scope of the patent even though it be valid.

The application for patent was allowed with two claims, numbered, respectively, 1 and 2. Claim No. 1 reads as follows: "A leader-pipe supporting strap comprising a single strip of sheet metal consisting of end portions having embossed reinforcements and a front portion between said end portions and having embossed reinforcement, said front embossed portion being spaced from the end embossed portions to form flat bending zones between said front and end portions."

Claim No. 2 is as follows: "A leader-pipe supporting strap comprising a single strip of metal provided with a front wall having a reinforcement embossed therein, side walls having reinforcements embossed therein, and projecting ends having reinforcements embossed therein, said front, side and end portions being spaced from each other to form flat transverse bending zones there between."

Plaintiff made his prima facie case by introducing the patent, and under a stipulation to the effect that defendants, subsequent to the patent and prior to the bringing of this suit and within six years thereof, sold, and are at present offering for sale, leader-straps similar to Plaintiff's Exhibits I, II, III, and IV, all of which was done within the Eastern District of New York, and without consent from plaintiff.

As to defendants' first claim that plaintiff is estopped: This argument has very little appeal. Both claims as finally allowed in the Patent Office, recite, "a leader-pipe supporting strap comprising a single strip of sheet metal." It is not two or three strips, but a single one strip of metal.

The old method of supporting leader-pipes was with a three-piece strap. It is very

evident from reading the history of this case as described by the file wrapper that plaintiff applied for and was granted a patent on a one-piece leader-pipe strap supporter.

In considering defendants' second claim, it may be well to briefly relate some of the historical facts which have some significance. It was common practice prior to the issuance of plaintiff's patent to fasten leader-pipes to buildings by using hooks to support the pipe, which hooks, for ornamentation, were covered with sheet metal, either with or without decorations. These sheet metal covers were usually constructed from three pieces of metal soldered together, and were made up in the shop and carried to the place where they were to be used in their completed forms. Skilled labor was necessarily used in this work, making this type of construction quite expensive. Plaintiff, being a man of practical experience in this line, produced a leader-pipe strap flat in form, making it easy to carry to the job, because the straps, being similar in shape and contour, easily nested together and could be taken to the place where they were to be installed in large numbers and with very little inconvenience and no danger of breakage. Arriving at the job, the straps were easily bent into shape and installed on the building by an ordinary mechanic; the bending zones making it practically impossible to bend the strap at the wrong places. The installation at the job required no tools or skilled labor, and, when finished, was at once useful in supporting the leader-pipe, and ornamental. It thus supplanted the old hooks and the ornamental covering.

The strap, when put upon the market by plaintiff, immediately became popular with the trade and speedily replaced the old three-piece strap and hooks. Almost immediately thereafter defendants' straps appeared upon the market; they were practically duplicates of those made and put upon the market by plaintiff under his patent. It appears in evidence, and is not denied, that dealers in leader-pipe supporters carried either plaintiff's or defendants' straps in stock and filled orders for straps from either make. The users very rarely specified either one in particular, and usually were satisfied with either strap furnished. They are so similar in design and working parts that it is practically impossible for a nonexpert to tell one from the other. In fact the court has experienced great difficulty in picking from the straps in evidence those made by plaintiff under his patent and those sold by defendants.

There was enough difference between plaintiff's patent and the prior art to command the approval of the Patent Office. This entitled plaintiff's patent to the presumption of invention or novelty which arises on the issuance of a patent. Diamond Rubber Company of New York v. Consolidated Rubber Tire Company, 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

Plaintiff's product attained great commercial success, but defendants urge that commercial success is not evidence of invention, and cites McGhee v. Le Sage & Co., Inc. (C. C. A.) 32 F.(2d) 875. This case, however, does not go as far as defendants claim. It only holds that commercial success does not necessarily prove that there must be novelty and invention. That it is evidence of novelty to be considered along with other evidence adduced at the trial is too plain to be successfully contradicted. That it is not conclusive may be admitted, but that it is to be considered is well settled by the authorities. Smith v. Goodyear Dental Vulcanite Company, 93 U. S. 486, 23 L. Ed. 952; Trane Company v. Nash Engineering Company (C. C. A.) 25 F.(2d) 267. And, where there is doubt as to invention or novelty, commercial success is sufficient to turn the scales. 25 F.(2d) 267, supra.

The burden of proving invalidity of a patent because of prior use or because of anticipation is upon the defendant who alleges it affirmatively. For the purpose of determining this issue, defendants are in the position of admitting infringement provided the patent is valid, and of claiming that, although their product is similar to and involves the same principles as plaintiff's patented article, yet they (defendants) are not liable because the patent is invalid. It is in the nature of confession and avoidance, and of course defendants have the burden of establishing the invalidity on account of prior use or anticipation. This burden is not only to establish the prior use by a fair preponderance, but by evidence which carries thorough conviction, as some of the cases put it, "beyond a reasonable doubt," for every reasonable doubt is to be resolved in favor of the validity of the patent. Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657.

Defendants' Exhibit A has very little similarity to the practical article which plaintiff has patented and put on the market. It is patently a mere decorative covering, and is not intended to support anything. The oak leaves on the ends, the fleurs-de-lis on the

sides, and the thistle on the front are there for embellishment or decorative purposes only. The distance between these decorations varies from one to two inches, and it is hard to conceive that they were put there for the purpose of forming bending zones. On the other hand, the straps made by plaintiff are plainly designed to permit the bending of the strap only in certain places. The decorations or embossments define the bending zones and strengthen the strap and make it easy to bend into the desired form around the pipe. Defendants' Exhibit A therefore does not anticipate.

Defendants' third contention is that they do not infringe plaintiff's patent in the manufacture of straps of which Plaintiff's Exhibits II, III, and IV are specimens. There is very little that appeals in this contention. As was said above, the straps are so similar in design as to make it hard to distinguish one from the other.

I cannot escape the conclusion that all of defendants' straps, represented by Plaintiff's Exhibits I, II, III, and IV, infringe plaintiff's patent, and for that reason the prayer of plaintiff's bill for injunction is granted, and the matter should be referred to a master to ascertain and report on the amount of damages sustained by plaintiff. Decree will therefore be entered in accordance with a form to be prepared and submitted to the court for approval.