## WATTERS et al. v. KNY–SCHEERER CORPORATION.

District Court, S. D. New York.
Nov. 11, 1932.

Percy Freeman, of New York City (Asher Blum, of New York City, of counsel), for plaintiffs.

Clarence G. Campbell, of New York City, for defendant.

COXE, District Judge.

This is a suit for infringement of the Watters patent, No. 1,597,129, issued August 24, 1926, for a bedpan cleanser and sterilizer. The claims relied on are Nos. 1, 2, 3, 4, 5, 8, 12, 13, 14, 18, 19, and 20; and claims Nos. 2 and 19 are cited as typical. These two latter claims read as follows:

2. "A bed pan washer comprising a vertical hopper set within a wall and having its face inclined rearwardly at the top, a cover hinged on a horizontal axis to swing over the face of the hopper in one position and present a shelf receptive of a bed pan when in another position, and pedal means for first releasing and thereafter initially actuating the cover permitting it to drop by gravity into a horizontal position."

19. "A bed pan washer having a door forming a shelf when opened and pairs of inreaching curved arms fixed at one of their ends on opposite sides of said shelf and extending immovably thereover for holding a bed pan in position on said shelf."

The defense is noninfringement.

The early hospital practice of cleansing bedpans was by means of an open faucet or hose, and a brush. Subsequently hoppers of various types were introduced, and these served both as cleansers and sterilizers. The most recent hopper device, prior to the invention of the patent, was the circular hopper with the revolving cradle, illustrated by Exhibit 6. This hopper was developed by the plaintiffs, and has been sold by them in fair quantity for a number of years, principally for use as a sterilizer. It has also been made the subject of a patent to Watters, No. 1,501,826, issued July 15, 1924.

These hopper devices never proved satisfactory for routine hospital work, and it was the uncontradicted testimony of the witnesses at the trial that they were dirty, unsanitary, and inconvenient to operate. The problem then was to find a simple apparatus which would satisfy the needs of hospital workers, and which might become standard hospital equipment; and, in an effort to develop such a device, Neergaard, a well-known hospital engineer, in 1923 requested four of the leading manufacturers of hospital supplies to attempt a solution of the problem. This resulted in 1924 in the production of the Watters device of the patent; and almost immediately it received general recognition, and, since its introduction, has been specified for practically all new hospital construction. The sales from 1925 to 1932 were approximately 2,500, with installations in from 600 to 700 hospitals in the United States, Canada, and foreign countries; and the defendant itself, prior to 1929, paid mute tribute to the merit of the invention by making sales of the device for the plaintiffs. In 1929 the defendant brought out its own design, and since that time it has sold two types, represented by Exhibits 4 and 5, in direct competition with the plaintiffs.

The Watters cleanser is a simple piece of apparatus which allows a nurse quickly and conveniently to handle a heavy bedpan without spilling the contents, and makes it possible thoroughly to clean the pan and the inside of the hopper by means of an ordinary water spray, without hand scrubbing. The main features of the device are: (1) A design which permits effective cleansing; (2) a pedally operated door, which, when closed, is tilted out of the vertical position, and, when released, is permitted to fall by gravity into a horizontal position to receive the pan; (3) a vent to carry off the foul odors; (4) immovable arms, designed and positioned on the inner surface of the door so as not easily to

become fouled, and capable of holding the pan securely in place; and (5) a pedal arrangement so constructed that a slight movement of the foot will bring the door to its vertical position.

The prior art contains nothing fairly approximating this arrangement. That, indeed, is not disputed, inasmuch as the defendant concedes validity. It is, however, insisted that the invention is so limited in its scope that the claims do not read upon the defendant's device.

The closest reference to the patent cited by the defendant is the circular hopper with the revolving cradle (Exhibit 6); and, aside from the fact that it is operated by a foot pedal, it bears no close resemblance to the Watters device. Moreover, it is open to all the objections of the earlier hopper types, and has been completely supplanted by the device of the patent. The Jennings British patent, No. 5,487 (1898), shows only a hopper with a vertically hinged door closed by a thumb nut, and a hook upon which the pan may be hung. It has none of the pedal arrangement of the Watters device, and is without any of its advantages. The same is true also of the Ehmann German patent, No. 228,-446 (1909), which discloses merely a bowl with a hinged cover frame capable of receiving in its open position a bedpan for cleansing. The device of this patent is in many respects similar to Exhibit 6, and is open to the same objections already noted with respect to that exhibit.

The remaining patent references cover merely separate elements of the Watters combination, such as the swinging cover operated from a vertical to a horizontal position by a foot treadle, shown in the Daggett patent, No. 244,381 (1881); and the clamps or engaging fingers of the patents to Hayworth, No. 1,075,287 (1913), and Heidbrink, No. 1,479,236 (1924). These patents were all cited in the Patent Office proceedings, and the patent issued over them; and the mere fact that they disclose separate elements of the patented combination is insufficient of itself to deny to the patent some equivalents commensurate with the advance made by Watters.

The differences between the two devices pointed out by the defendant's expert are: (1) That the defendant's device has no lock or keeper to hold the door shut against the body of the washer; (2) that the cover is not tight against the washer body; (3) that the defendant's device does not have the four independent uprights for holding the pan in place, as called for by the claims; and (4) that the exact pedal means of the patent are not present. Claim 2 of the patent specifies "pedal means for first releasing and thereafter actuating the cover permitting it to drop by gravity into a horizontal position." There is nothing in this language which limits the patent to a construction having a lock or keeper to hold the door in closed position. Obviously, the door must be closed sufficiently to counteract the slight pressure from the spray head, and this is accomplished in both devices primarily by the tilting of the cover from its vertical position. In both types of the defendant's device (Exhibits A and B) the offset shelf helps to keep the door in place; and in the defendant's present or later type (Exhibit B) there is in addition a spring to overcome any tendency to open; but in both plaintiffs' and defendant's devices the door is kept closed in substantially the same way.

It is insisted, however, that the words "first releasing," appearing in claim 2, mean the opening of a lock or the throwing of a bolt, and that Watters expressly placed this limitation on the language of the claim in the Patent Office proceedings. It is, I think, a sufficient answer to this contention: (1) That the word "releasing," as used in the claim, means "opening" or "allowing to fall"; (2) that the patent itself contains, in addition to general claims, limited claims which specifically mention a "spring catch" or a "snap catch" (claims 6, 7, 9, and 10); and it is a familiar rule of construction that limitations of specific claims are not to be imputed to claims containing more general language, French v. Buckeye Iron & Brass Works (C. C. A.) 10 F.(2d) 257, 262; and (3) that no such limitation as insisted on by the defendant is to be found in the file wrapper, Art Metal Works v. Abraham & Straus (C. C. A.) 61 F.(2d) 122; Deitel v. Unique Specialty Corp. (C. C. A.) 54 F.(2d) 359. Furthermore, it is well settled that arguments of an applicant for a patent are entitled to no weight. Spalding & Bros. v. John Wanamaker (C. C. A.) 256 F. 530, 534. I can see no reason, therefore, for limiting claim 2 in the manner contended for by the defendant.

The second point of distinction urged by the defendant's expert, namely, that the defendant's door does not fit tightly, and therefore avoids infringement, is unfounded. Both devices are sufficiently sealed to prevent leaking, as obviously their entire purpose would be defeated if they failed in that respect. Moreover, the defendant describes its device in its advertising matter as sanitary, odor-

less, and leak proof; and concededly this is its normal method of operation. It is of no consequence, therefore, that under purely abnormal conditions some leakage may take place. Wright Co. v. Herring-Curtiss Co. (C. C. A.) 211 F. 654.

The third point of distinction asserted is that the defendant's device does not have "pairs of inreaching curved arms," as specified in claim 19, for holding the pan in position. It was admitted, however, that it would make no difference in the operation of the plaintiffs' device if the curved arms were connected by longitudinal bars; and that is exactly what the defendant uses. It seems too plain for argument, therefore, that the two expedients are the same. Infringement is not avoided, either, because the defendant finds in the prior art clamps similar to those it uses in its devices. So also is it possible to find in the prior art counterparts of the plaintiffs' arms; but their presence in the patented combination was new, and it is the combination which constitutes the invention, and which is entitled to protection.

The fourth difference urged by the defendant requires no discussion, as it is clear from a mere superficial examination of the two devices that the pedal of the defendant's device is operated in substantially a straight line; and any slight deviation creates no difference in function or in method of operation. ...

The above covers all of the asserted differences urged by the defendant, and disposes of all of the objections to the claims involved in the suit.

It follows that the plaintiffs may have a decree holding claims Nos. 1, 2, 3, 4, 5, 8, 12, 13, 14, 18, 19, and 20 valid and infringed, with costs.