JOHNSON BROS. ENGINEERING COR-
PORATION et al. v. CAILLE BROS.
CO.

No. 3928.

District Court, E. D. Michigan, S. D.
July 25, 1934.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (George L. Wilkinson, Kent W. Wonnell, and Charles L. Byron, all of Chicago, Ill., of counsel), for plaintiffs.

Swan, Frye & Hardesty, of Detroit, Mich. (George Rex Frye and Francis D. Hardesty, both of Detroit, Mich., of counsel), for defendant.

KNIGHT, District Judge.

This is an action for patent infringement. Claims numbered 6, 11, 12, 13, and 14 of Patent No. 1,716,962, granted to H. L. Johnson on July 11, 1929, are alleged to be infringed. Defendant denies infringement and alleges invalidity of the patent. It is admitted that Johnson Brothers Engineering Corporation is the exclusive owner of the patent and Johnson Motor Company the exclusive licensee thereof.

The alleged invention is described in the patent as a "Water Propulsion Device." The parties hereto are and have been for a considerable number of years extensive manufacturers of outboard motors for use on boats. The device relates generally to an outboard motor construction and more particularly to the method of connection and mounting of the motor, and the underwater casing inclosing the lower end of the drive shaft and the propeller shaft. It is claimed for this patented device that more economy in construction, and much greater efficiency in the motor operation resulting in easier control and higher speed have obtained.

The defendant has set up in its answer several patents claimed to anticipate the patent in suit, and upon the trial numerous other patents were offered by the defendant and received to show the state of the outboard motor art.

Plaintiffs claim that Harry L. Johnson invented the devices in question on May 23, 1924. The application for the patent including eleven claims was filed August 25, 1926. On December 15, 1926, all the claims in the application were rejected as too broad and as reading on various prior patents.

The application was twice amended, and thereafter and on June 7, 1928, those relating solely to a deflecting plate member rearwardly of the propeller were disallowed and claim 6 (originally claim 9) allowed.

The references against these claims were Caille No. 1,107,408; Hult et al. No. 1,146,-427; Buchner No. 1,460,570; Johnson No. 1,467,641; Wagner No. 1,535,511; Johnson No. 1,567,512; Dawson No. 1,576,237; Sikorsky No. 1,560,869; Fisher No. 1,091,645; and "Design of Airplanes" by Arthur W. Judge. None of the claims to this time included any description of the contour of the propeller casing, nor to any anti-cavitation plate cast integrally with the propeller casing, or the location of such plate with reference to the top of the casing.

Thereafter and on December 5, 1928, numerous claims were added purporting to cover the elements now included in the other claims in controversy. After further amendments and additions to the claims, and also to the specifications, on May 10, 1929, all the claims in the patent were allowed.

The defendant urges numerous grounds why this action cannot be maintained. The court will endeavor to consider these in a logical order.

### Findings of Fact.
### Infringement.

Claim 6 calls for a combination of outboard motor with propeller shaft casing, propeller, a member arching one side of the propeller, an anti-cavitation plate carried by the casing, and the member arching the propeller and located above the propeller.

There can be no doubt that defendant's outboard motor of the type advertised by defendant in its catalogues for the years 1928 and 1929, as sold by defendant, reads on claim 6 of the patent in suit. Defendant's construction in those years definitely shows in combination with the motor a propeller shaft casing, propeller, member arching one side of the propeller, and anti-cavitation plate carried by the casing and a member arching the propeller and located above the propeller. These include every element of the claim. Defendant's disclaimer is that this construction does not include a member arching one side

of the propeller in the sense that the term is used in the patent and also that its water tube member braces the anti-cavitation plate rather than the reverse. In support of this disclaimer defendant points attention to the language of the specification describing the arching member at lines 32 et seq., p. 1; lines 20 and 21, p. 2, and lines 50 to 53, p. 2. The patented structure shows, as recited in line 32 et seq. of the specifications, a casing at the lower end of the drive shaft casing with a member arching the upper side of the propeller. The anti-cavitation plate is cast integrally with the propeller and forms a part thereof. From the rearward part of the anti-cavitation plate extends the member arching the propeller. The propeller blades do pass through the arched portion, as recited in lines 20 and 21, supra, and the anti-cavitation plate is properly described as forming a brace for the arch portion of the casing as set forth in lines 52 and 53. Defendant asserts that no part of its water tube arching member is below the anti-cavitation plate forward of the propeller plate and that the tube braces the plate rather than the plate the tube.

No material inconsistency is to be found as between the claim and the specification. In either structure it may be said that the plate and the tube support each other. Any distinction is without materiality. Each of the corresponding parts of the two structures serve the same purposes in the same way and in the same arrangement. Plaintiffs' construction in addition shows what is termed a "water resisting deflecting plate" carried rearwardly of the arching member. This is of no moment in the comparison of claim 6 with defendant's construction.

Claim 13, in addition to those elements found in claim 6, shows a vertically extending propeller shaft casing with internal water passage opening below water level, with a propeller mounted on the casing and means for turning such casing for steering. Defendant's outboard motors of 1928 and 1929 show all these elements of this claim and in the same combinations and functioning the same as those in the patent structure. "Propeller shaft casing," as used in the claim, refers to the casing inclosing the propeller shaft. It is not confined to the barrel-like portion of the lower end of the housing as defendant contends. Reference to the specification and drawing clearly indicates the particular element claimed. Defendant contends that the propeller shaft casing in the patent means that barrel-like portion at the extreme lower end of the housing; that all above that is the drive shaft casing. Defend-

ant admits that its water passage is internal "for a way," but claims that it is entirely external with relation to the drive shaft casing, as it construes the meaning of drive shaft casing. The claim reads "vertically extending propeller shaft casing with internal water passage." The specification and drawing clearly demonstrate that the propeller shaft casing, as mentioned in the claim, means and includes the vertical portion above the barrel-like part. Complete corroboration for this view is also found in other language in the claim which reads, "said casing (propeller shaft casing) having an anti-cavitation plate cast integrally there-with and located in a plane above the propeller." Each structure shows a propeller shaft casing with an internal water passage below normal water level. It is of no moment that defendant's structure shows this passage opening out of the casing. Both are inside for the same purpose—to reduce resistance to the minimum.

In defendant's construction in 1930, and subsequently, there is shown a small auxiliary plunger pump attached to the member arching the propeller at a point rearwardly of the propeller and of the water intake. This pump is supplied as an auxiliary. It is easily detachable. It is claimed that this was necessary to properly circulate the water when the boat was proceeding at one-third speed. It is claimed that the prior systems were insufficient. The proof to establish this contention is not convincing. The wide and general use of the system without the pump refutes the claim. The addition of the pump does not change the general character of the function of the cooling system. While improvement in a cooling system may be patentable and often is patented, if the function of the patent is substantially appropriated, there is infringement. Plaintiffs' patent is substantially appropriated. General Electric Co. v. Alexander et al. (C. C. A.) 280 F. 852; Gibbs v. Triump Trap Co., Inc. (C. C. A.) 26 F.(2d) 312.

The 1930–1933 constructions of the defendant show an internal water passage located at the front of the propeller casing rather than at the rear as shown in the constructions of 1928 and 1929. This water passage extends from its opening part way in the propeller shaft casing and such opening is necessarily below normal water level. Plaintiffs' patent does not limit the location of the internal water passage, except that it is below the water level. The purpose of inclosing the water passage below the water level is apparent. It lessens turbulence and

resistance. Despite this change in construction, the changed construction reads on the plaintiffs' claim.

Claim 14, in addition to the elements shown in claim 13, describes the propeller shaft casing as having "smooth and unbroken walls extending upwardly and provided with an integrally cast anti-cavitation plate substantially midway of its height and in a plane above the propeller blades." This claim is more limited than claim 13. The outboard motors of defendant in 1928 to 1933, inclusive, show propeller shaft casings with smooth and unbroken walls extending upwardly and with anti-cavitation plates substantially midway of the height of the casing extending in a plane above the propeller blades. Several claims in the patent describe the propeller shaft casing as having smooth and unbroken walls. The specification of the patent refers to one of the objects of the invention as being "in forming the exterior surfaces of this casing relatively broad and smooth" and states that "a further feature of this aspect of my invention resides in the fact that the propeller carrying-casing, as thus constructed, provides an enclosing housing for the drive and propeller shafts * * * by which arrangement the propeller-carrying casing can move through the water with minimum resistance," and, further, "this propeller-carrying casing is provided with relatively broad and unbroken exterior surfaces both below and above the anti-cavitation plate 20," and, further, "by means of this construction when the device is propelling the boat through the water, the water will flow with minimum resistance past these relatively smooth and substantially streamline surfaces of the casing." The specifications and drawings are to be read in connection with and in aid of the claim. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; Nieblo Mfg. Co. v. Preston (C. C. A.) 39 F.(2d) 604; Victor Cooler Door Co. v. Jamison Cold Storage Door Co. (C. C. A.) 44 F.(2d) 288; Trico Products Co. v. Apco-Mossberg Corp. (C. C. A.) 45 F.(2d) 594. In interpreting the claim, the court will take into consideration the purpose and the operation of the alleged invention as described in the specifications. The claim, therefore, includes a streamline propeller shaft casing such as is shown in defendant's construction in 1928 and 1933, inclusive. Defendant's construction in these years shows the same combination of parts as included within claim 14 and as shown in the plaintiffs' construction. Defendant's construction does substantially the same work in the same way as does the plaintiffs' structure. That is a test of infringement. Stearns-Roger Mfg. Co. v. Ruth (C. C. A.) 62 F.(2d) 442.

Claims 11 and 12 may well be considered together. Plaintiffs' Exhibit 11 is a photo-

Plaintiffs' Exhibit No. 11

graph of plaintiffs' underwater device and Exhibit 8 of defendant's 1928 and 1929 corresponding device. Both include, as elements, a stationary support carrying a bearing, a drive shaft casing mounted to turn in said bearing, a motor mounted on the upper end of the drive shaft casing with drive shaft within the shaft casing passing downwardly therethrough, a housing mounted on the lower portion of the drive shaft casing and turning therewith and including a substantially barrel-like portion and having a driving connection with the motor drive shaft and a propeller on the propeller shaft and a substantially internal water passage. Both include an anti-cavitation plate on the housing, mounted at the lower end of the drive shaft casing, and extending rearwardly therefrom overlying the path of forward travel of the propeller blades. Claim 11 locates the anti-cavitation plate "well below" the top of the housing. Claim 12 is silent as regards the location of the anti-cavitation plate other than as hereinbefore stated. Claim 12 describes the housing as having unbroken outer wall surfaces at each side extending upwardly from said barrel-like portion to said plate and from said plate upwardly a sub-

Plaintiffs' Exhibit No. 8

stantial distance to the top of the housing. Claim 11 contains no description of the lines of the housing other than the barrel-like portion. All of the elements of these claims have heretofore been considered in connection with claims 6, 13, and 14, save those which relate to the stationary support carrying a bearing, the drive shaft mounted to turn therein, and the motor mounted on the upper end of the drive shaft casing, with its shaft disposed within the drive shaft casing. Together these claims disclose the method of connection and movement of the outwater part of the water propulsion device with the underwater part, and also the construction of the underwater part of such device.

■ Concededly each structure has a stationary support. Clearly each structure has a bearing in which the drive shaft casing is turned. This bearing in plaintiffs' structure is directly connected with the stationary support attached to the rear end of the boat. The bearing in defendant's construction is formed by two collars secured to the under part of the crank case. The flanged upper end of the drive shaft casing hangs on the motor in such collars. Defendant's motor is stationary. In this formation it forms a stationary support carrying a bearing. The drive shaft casing is mounted to turn in the bearing. Likewise construing that part which attaches to the boat as a stationary support, the motor casing and connection with such so-called stationary support form a part of a stationary support carrying a bearing. In each construction the tiller turns the drive shaft in the drive shaft casing. Two elements are construed in one. That does not avoid infringement. Arthur Colton Co. v. McKesson & Robbins, Inc. (C. C. A.) 58 F. (2d) 157; Lamson Co. v. G. & G. Atlas Systems, Inc. (C. C. A.) 14 F.(2d) 22; Starr Can Opener Co. v. Turner & Seymour Mfg. Co. (D. C.) 35 F.(2d) 255. While plaintiffs' motor is turnable and the propeller can be moved to any direction for steering or reversing, and while defendant's motor is stationary and the movement of the tiller and propeller is limited, and the propeller cannot be reversed by its movement, this difference in structure does not go to any function involving the claims. The claim reads "a motor mounted on the upper end of said drive shaft

Plaintiffs' Exhibit No. 17

JOHNSON

1 - MOTOR

PIVOT - 5

BRACKET OR SUPPORT 6

3 - BEARING

2 - DRIVE SHAFT CASING

DRIVE SHAFT

casing." Defendant contends that in its structure the drive shaft casing is mounted on the motor. In the sense in which the word "mounted" is ordinarily construed, defendant's motor is mounted on the upper end of the casing. An examination of the structures as disclosed shows the distinction sought to be drawn to be without merit.

Variations in arrangement of parts do not avoid infringement where the functions are the same. Wagner Typewriter Co. v. Wyckoff, Seamans & Benedict (C. C. A.) 151 F. 585. Neither do additions to elements avoid infringement where the resulting function is the same. Plaintiffs' Exhibits 17 and 17a show the location of the respective bearings and their connections.

Defendant's structure in each year 1929 to 1933, inclusive, reads on claims 11 and 12.

The structures of plaintiffs' device and defendant's 1928–1929 device are shown in their drawing Exhibits 2 and 9.

*Plaintiffs' Exhibit No. 17a*

CAILLE

Plaintiffs' Exhibit No. 2

June 11, 1929.                H. L. JOHNSON                1,716,962

WATER PROPULSION DEVICE

Filed Aug. 25, 1926

Fig. 1.

Fig. 3.

Fig. 2.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
JOHNSON BROTHERS ENGINEERING
CORPORATION, et al.,
                Plaintiffs,
        vs.
CAILLE BROTHERS COMPANY, doing
business as CAILLE MOTOR COM-
PANY,           Defendant.
        PLAINTIFFS' EXHIBIT NO. 2

INVENTOR

Harry L. Johnson.

BY

George J. Wick

6-STATIONARY SUPPORT
3-BEARING
2-DRIVE SHAFT CASING
1-MOTOR
17-HOUSING
A-VERTICAL MOTOR DRIVE SHAFT
B-HORIZONTAL BARRELL-LIKE HOUSING
C-HORIZONTAL PROPELLER SHAFT
D-BEVEL GEAR DRIVING CONNECTION
10-PROPELLER
20-ANTI-CAVITATION PLATE
11-PROPELLER BLADES
12-VERTICAL INTERNAL PASSAGE
E-UNBROKEN OUTER WALL SURFACE
F-PASSAGE OPENING BELOW NORMAL
   WATER LEVEL
16-MEMBER ARCHING PROPELLER
9-HANDLE FOR STEERING

## Anticipation.

Defendant contends that the prior art left no room for invention and that the patent in suit is therefore invalid. The burden rests upon the defendant to show invalidity. Finucane v. Swimmer et al. (D. C.) 45 F.(2d) 798; Gates Rubber Co. v. B. F. Goodrich Rubber Co. (D. C.) 45 F.(2d) 652. A presumption of validity arises from the issuance of the patent [Diamond Rubber Co. v. Consol. Rubber Tire Co., 220 U. S. 429, 31 S. Ct. 444, 55 L. Ed. 527; Cheney Co. v. City of Medford (D. C.) 5 F. Supp. 262, 263; Mallinckrodt Chemical Works v. E. R. Squibb & Sons (D. C.) 6 F. Supp. 173], and this presumption is increased when it is made to appear that the alleged anticipating or prior art patents were considered by the patent office in connection with the application [Gray v. Eastman Kodak Co. (C. C. A.) 67 F.(2d) 190]. Among the patents cited by defendant and considered by the patent office are: Daw-

son No. 1,576,237; Johnson No. 1,567,512; Johnson No. 1,467,641; Fisher No. 1,091,-645; Pierce No. 1,576,834; Smith No. 1,226,-400; Lanchester No. 14,792. Others cited in the answer or otherwise pleaded are: Morgan No. 968,385; Evinrude No. 1,001,260; Fisher No. 1,091,645; Barlow No. 1,099,684; Hult No. 1,146,427; Bivert No. 1,181,634; Moore No. 1,252,360; Toennes No. 1,481,112; Mould No. 1,502,479; Evinrude No. 1,567,-127; Johnson No. 1,559,616.

A careful examination of all of these patents discloses that no one of these shows a combination of all of the elements included in any of the claims at issue herein. On account of the special emphasis urged by the defendant, more particular reference may be made to certain of these patents. Lanchester No. 14,792 shows a motor connected with a propeller through interior of the oar. The blade of the oar, positioned as described in the patent, may be said to operate as an anti-cavita-

tion plate. The construction shows no casing inclosing the propeller in the form described in the patent in suit and no water passage. Smith No. 1,226,400 shows a drive shaft casing with an anti-cavitation plate above the propeller, but shows no propeller casing with anti-cavitation attached and no internal water passage. A special feature of this patent is the anti-cavitation plate. Pierce No. 1,579,834 shows the feature of a water cooling system with intake forward in the propeller housing and outlet forward of the propeller blades. It however discloses no anti-cavitation plate and no member arching the propeller. Fisher No. 1,091,645 relates to an invention on a compensation steering apparatus and discloses no elements in conflict with the suit patent claims. Bivert Patent No. 1,181,634 does not show a member arching one side of the propeller or anti-cavitation plate or a vertically extending internal propeller shaft casing. Hult No. 1,146,427 does not show a corresponding housing or anti-cavitation plate, or any internal water passage through a propeller shaft casing. Johnson No. 1,567,512 is an invention relating to a motor water cooling system in which by action of the propeller blades the water is driven through the water jacket of the motor in a manner comparable with the patent structure. However, the bracket through which the water passage extends does not act as an anti-cavitation plate. It is said to arch the propeller blades, but there is nothing to show its shape as an anti-cavitation plate. Further, this patent discloses no under-water unit with streamline casing. Johnson No. 1,467,641 shows no streamline housing for propeller shaft, no anti-cavitation plate cast integrally with such housing, no member arching the propeller, and no water passage in the housing. Each of the aforementioned patents shows elements of one or more of the claims in suit, but no one of them shows combination of the elements of all of these claims. The test of patentability is whether the assembly of known elements in a new combination produces a new, practical, and beneficial result, and whether the combination so made results from the application of other than ordinary mechanical skill. The rule as stated is this-wise: It is perfectly well settled that a new combination of elements, old in themselves but which produce a new and useful result, entitles the inventor to the protection of a patent. General Fireproofing Co. v. Expanded Metal Co., 214 U. S. 366, 29 S. Ct.

652, 53 L. Ed. 1034; Lyman Mfg. Co. v. Bassick Mfg. Co. (C. C. A.) 18 F.(2d) 29; American Ball Bearing Co. v. Finch (C. C. A.) 239 F. 885; National Battery Co. v. Richardson Co. (C. C. A.) 63 F.(2d) 289; Emery v. George H. Bowman Co. (C. C. A.) 11 F.(2d) 525; McCarthy et al. v. National Perforator Co., Inc. (D. C.) 5 F. Supp. 210; Watters et al. v. Kny-Scheerer Corp. (D. C.) 5 F. Supp. 450; Id. (C. C. A.) 68 F.(2d) 27; Wicke v. Ostrum, 103 U. S. 461, 26 L. Ed. 409. "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made." Victor Cooler Door Co. v. Jamison Cold Storage Door Co. (C. C. A.) 44 F.(2d) 288, 293.

Johnson et al. Patent No. 1,574,977, application filed June 16, 1924, and issued March 2, 1926, was not pleaded in the answer as an anticipation. The court permitted an amendment to present the issue of anticipation. This patent may be considered together with Johnson et al. Patent No. 1,559,616, filed June 16, 1924, and issued November 3, 1925. The evidence shows that Harry L. Johnson had completed a drawing of the patent in suit and had disclosed the drawing to Louis J. Johnson prior to June 1, 1924, and to one Irgens. Louis J. Johnson and Harry L. Johnson are copartners in these two patents. Both copatentees and Irgens testified to this fact, and such copatentees made affidavits before the patent office to the same effect prior to the issuing of the patent in suit. There is nothing to show that the Johnson et al. patents were invented prior to June 1, 1924. Since the applications for the Johnson et al. patents were not made until November 25, 1925, and March, 1926, respectively, it cannot be said that there was any publication thereof more than two years prior to the filing of the application for the patent in suit. It would appear therefore that neither of these alleged anticipating patents constitute a reference. Assuming they disclose the same elements as those in the claim in suit, the burden is on the defendant to show anticipation. In neither of these joint patents were claims directed to the combination of elements in the claims in suit. In neither of these copatentee patents are disclosed any claims or specification of any streamline propeller housing, or any member arching propeller through which there is any water passage and no water passage in any

propeller housing. It does appear that there is in Patent No. 1,574,977 a member which acts as an anti-cavitation plate. These joint patents do not disclose anything with reference to a propeller shaft casing turnable for steering nor do they disclose various other elements of the outwater portion of plaintiffs' construction.

### State of Art.

Patents and documents offered in evidence on the state of the art were L. J. Johnson No. 1,467,641, Urch No. 942,986, Echard No. 463,386, text-book of "Theoretical Naval Architecture," "Motor Boating" publication, and Simpson's "The Naval Constructor." L. J. Johnson No. 1,467,641 cited in the patent office shows no streamline casing, no anti-cavitation plate on a streamline casing, no vertical water passage in the casing. The water passage is entirely outside of such casing. Aside from the question of whether Echard shows any streamline propeller casing, as claimed by defendant, it discloses no anti-cavitation plate and no arching member extending over the propeller, and its water conduit is entirely outside the propeller shaft casing. Urch No. 942,986 shows an inboard motor and shows no anti-cavitation plate, and the drive shaft casing is stationary. The combination discloses a rudder at the rear. While the publications mentioned describe generally certain outboard motor constructions, none describes the combination in any claim in the suit. Like the alleged anticipatory patents, none of these patents showing the state of the art includes a combination of the elements recited in the claims in suit.

Pierce Patent No. 1,576,834, application filed October 10, 1924, patent issued April 26, 1926, was cited against certain of the claims in suit. The applicant for the patent in suit filed an affidavit pursuant to rule 75 of the patent office setting forth that the applicant completed his invention prior to the above-mentioned filing date of the Pierce Patent. Reference was thereupon withdrawn. While it is not necessary to consider the truth or the sufficiency of this affidavit as bearing upon the question of the reference, we have the testimony of three witnesses that the invention in suit was completed prior to the filing date of this reference and prior to June, 1914.

The law regards a change as a novelty, and the acceptance and utility of the change as further evidence, even as a demonstration of novelty.

The combination in suit was publicly shown in 1926, and shortly thereafter the leading outboard motor manufacturers began to put similar structures on the market. The utility of the invention was quickly demonstrated by increases in sales and use. It long since passed the experimental stage in the minds of the users and has ever since been recognized as the most approved type of construction in outboard motors. An essential factor in this connection is that the defendant has adopted the form of structure. The defendant "gives" it the tribute of its imitation. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527. A large public demand and the commercial success are evidence of invention. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298. The court should endeavor to sustain a patent, rather than defeat a patent, where such results have obtained. Eclipse Machine Co. v. J. H. Specialty Mfg. Co. (D. C.) 4 F. Supp. 306. Study of the history of the art discloses that the device of plaintiffs was something more than the development of ordinary mechanical efforts. Hookless Fastener Co. v. G. E. Prentice Mfg. Co. (C. C. A.) 68 F.(2d) 941. The problems which the patent device overcame must have been apparent long before this invention was conceived. But these problems were not solved until the devices covered by the claims in the patent in suit were invented.

### Conclusions of Law.

1. Claims 6, 11, 12, 13, and 14 of Johnson Patent No. 1,716,962 in suit are infringed by defendant's 1928 and 1929 models of outboard motors.

2. Claims 11, 12, 13, and 14 of Johnson Patent No. 1,716,962 in suit are infringed by defendant's 1930, 1931, 1932, and 1933 models of outboard motors.

3. The combination of the several elements set forth in each of the claims 6, 11, 12, 13, and 14 in the form or device assembled by the plaintiffs, as disclosed by the claims, specifications, and drawings amounted to and embodies invention.

4. Claims 6, 11, 12, 13, and 14 of Patent No. 1,716,962 are valid over any and all specific prior arts shown herein.

5. Plaintiffs' Patent No. 1,716,962 is not anticipated by any patents cited by defendant or otherwise pleaded.

6. The state of the art at the time for the application for patent in suit herein did not

deny the plaintiffs the right to a patent herein.

7. Patent No. 1,716,962 in suit, in respect to claims 6, 11, 12, 13, and 14, is in all respects a valid patent.