OUTBOARD MARINE & MFG. CO. et al. v.
MUNCIE GEAR WORKS, Inc., et al.

No. 7388.

Circuit Court of Appeals, Seventh Circuit.
Jan. 29, 1941.

Rehearing Denied May 16, 1941.

Geo. L. Wilkinson, of Chicago, Ill., and S. L. Wheeler, of Milwaukee, Wis., for appellants.

Chas. W. Rummler, of Chicago, Ill., for appellees.

Before EVANS and TREANOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

This appeal involves six patents which the District Court disposed of by consolidating two suits and hearing them together. Of the six patents, plaintiff, Outboard Marine & Manufacturing Company, is the owner of three, Nos. 1,786,835; 1,869,749; 1,875,912; and is the exclusive licensee of the remaining three, which are owned by Johnson Brothers Engineering Corporation, a co-plaintiff. The latter three are Nos. 1,716,962; 1,763,970; and 2,067,533. They all deal with phases of outboard motors in which field plaintiffs appear to be the leaders.

The Outboard M. & M. Co. operates two separate plants, one known as the Evinrude Motors Division, located at Milwaukee, Wisconsin, and the other, the Johnson Motors Division at Waukegan, Illinois. Each has its own separate engineering and production staff, and the output of each plant is large. It asserts responsibility for most of the development of the outboard motor industry and contends that defendants are endeavoring to enter the field by copying plaintiffs' motors and improvements and appropriating the results of its long continued and costly research efforts.

The more specific legal questions raised by the record, to which we must confine our attenion, are asserted validity of certain improvement patents and the asserted avoidance of infringement by defendants' structure, wherein it appears defendants have made a studied effort to avoid a narrow patent through a slightly changed mechañism. This situation necessitates an ascertainment of the place of the patent in the art and the correlative inquiry as to the extent of the mechanical equivalents we should allow.

The court found claims 11, 12, 13, and 14 of Johnson patent, No. 1,716,962, were invalid because aggregations and also that claims 11 and 12 of said patent were not infringed and that claims 13 and 14 would be infringed if they were valid.

The court also found claims 3 and 14 of Johnson patent, No. 1,763,970, are invalid because aggregations. It also found them not infringed.

It found claim 19 of the Pierce Reissue patent, No. 18,118, invalid, because of the prior art and also infringed, if valid.

It found claim 16 of No. 1,875,912 was not infringed by defendants' structure. Claims 1, 4, 5, 8, 9, and 10 of Evinrude No. 1,786,835, were held invalid because aggregations. Claims 5 and 10 of said patent were not infringed, and claims 1, 4, 8, and 9 were infringed, if valid.

It also found claims 1 and 2 of the Irgens patent, No. 1,869,749, to be not infringed. It also held the Johnson patent, No. 2,067,533, invalid.

By separating and dealing with each claim in each patent and making findings both on the validity and the infringement of each claim, the District Court has greatly lessened our burden.

While our purpose is not to avoid writing lengthy opinions, we are convinced that elaboration of views may be unnecessary where specific and direct findings on individual claims by the District Court are in

full harmony with like findings by us made, after an independent study, and the issue before both courts is a factual one.

Plaintiffs' counsel call our attention to the relative importance of the various claims, admitting that some patents cover minor and rather unimportant improvements which are narrow in scope. Quite unjustified would we be to devote a great deal of time to them, when we are clearly convinced and our conclusion is confirmed by the decision of the trial court.

■ Such a patent is the Johnson patent, No. 2,067,533, covering a "Spark Plug Cover." The claims in issue covered an exposed spark plug on an internal combustion engine with the novel claim element consisting of a "normally closed cover therefor hinged to the engine for making a tight connection with its outer surface and movable to cover and uncover the spark plug."

We have no hesitancy in holding that providing a cover for a spark plug, which cover can be moved so as to shield the spark plug, is not invention, irrespective of any prior art.

■ Likewise we will dispose of the non-infringement defense of the defendants to claims 3 and 14 of patent No. 1,763,970, entitled "Stream Line Construction," without elaborating our views. We will not deal with the validity of these claims in view of our conclusion that the accused structure does not infringe. Claim 3 describes a propeller wherein the "said casing having a portion projecting above the water level of substantially symmetrical knife-edge or wedge-like stream line contour and having a portion below said anti-cavitation plate, the front vertical edge of which is of substantially bluntly rounded stream line contour and the trailing edge of which is substantially knife-edge or wedge-like stream line contour."

We are satisfied that the front vertical edge of the accused device is not of "substantially bluntly rounded stream line contour." As the trial judge observed, "It is knife edge as that term is used in the art."

■ Patent No. 1,875,912 covers a cooling system for marine engines, and only claim 16 is involved. The court found this claim was not infringed. While we doubt the soundness of this finding, we are of the

opinion that the defense of invalidity must be sustained.

Novelty, if any, in the combination of this claim, lies in the shape of the opening which provides a water inlet of sufficient capacity and so located with reference to the stream line surface that it does not extend to any portion of the stream line in which it might be subject to increased pressure or vacuum.[1] In other words, Arndt, the inventor, so shaped his inlet opening as to make it stay within the confines of a narrow upright surface. This was accomplished by extending the inlet vertically along the forward apex of his stream line lower unit. Substituting an inlet which is transversely narrow and vertically elongated for a somewhat circular one, does not, in this art, pass beyond the skill of the mechanic. We therefore hold the claim invalid.

■ Patent No. 1,869,749, to Irgens, covering an "Exhaust Tube for Internal Combustion Engines" presents two claims which the court found were not infringed.

The asserted patentable novelty of the combination consists of a tapering exhaust pipe having a submersible outlet movable in accordance with the operation of the engine and directed rearwardly, *"the tapering form of said pipe being adapted to destroy its resonance to pulsation frequencies."* The second claim describes the novel feature as having an exhaust pipe leading from the manifold and of such dimensions as to be resonant to the frequency of the pulsations occasioned therein by engine exhaust, the pipe having a tapered form destructive of such pulsation.

After the claim had been rejected in the Patent Office, the Board of Appeals allowed the claim in the following language:

"The mere tapering of the pipes is deemed insufficient to obtain the function desired. It is obviously necessary to design the pipe of proper dimensions. Applicant gives certain dimensions in his specifications. The exact length of the tube is not given although it may be fairly well estimated from the drawing when the pipe is compared with the boat illustrated."

"It is considered that none of the claims except 7, 8, and 9, are sufficiently specific to define over the prior art for the reasons stated by the Examiner. Such claims as the first to the fourth, merely relate to

---

[1] We use counsel's language in substance.

tapering the pipe. Claims 5 and 6 state dimensions of cross sections of the pipe, but state no length of the pipe used."

From the foregoing, it is apparent that it was not patentable to merely cover a tapering pipe as such. To be valid, the claim must describe an exhaust pipe of a particular type. Only the pipe described in the above-quoted portions of the claim possessed patentable novelty. But the evidence fails to show that the tapering pipe of the accused structure was of such dimensions "as to be resonant to the frequencies of the pulsations occasioned therein by the engine exhaust." The burden was on plaintiff. Proof that defendant used a tapered pipe is insufficient.

A tapering pipe, as such, was not the subject of a valid patent, and claims drawn thereon were rejected. The allowed claims may not now be construed as to cover tapered exhaust pipes without adding other specific limiting characteristics, such, for example, as to be of such dimensions as to destroy its resonance to pulsation frequencies.

Somewhat complicated[2] and more difficult to appraise its place and value in this art is patent No. 1,716,962, for a "Water Propulsion Device." It concerns itself with the construction of the lower unit of an outboard motor, and its object is to avoid what in this art is known as cavitation, the avoidance of which was desirable, if not necessary, in the construction and successful operation of high-powered outboard motors.

When a power driven propeller turns in a body of water in which it is immersed, its action tends to drive the water rearwardly. The reaction is what propels the boat. A vacuum near the propeller results, into which air passes, because air moves more rapidly than the water. The invention covered by this patent tenders a proposed solution of this cavitation difficulty.

In high-powered motors the problem of the engineer was to avoid or lessen cavitation. We need not concern ourselves with, or enlarge upon, the utility of such an invention, for it is obvious that whether used on high-powered racing boats only, or whether the benefits are large or small, any successful effort which lessens cavitation, evidences utility.

The presumption which attends the grant of this patent is strengthened by its extensive use, the promptness with which it was accepted, and a decision of a court which upheld it. Johnson Bros. Engineering Corp. v. Caille Bros. Co., D.C., 8 F.Supp. 198. This presumption has been greatly weakened, however, by the decision of the District Court in the instant case.

Of interest is its record in litigation with one loss and one victory, as bearing on the existence of *doubt* as to validity. It is only in doubtful cases that we may look to its acceptance by the users and its adoption by manufacturers. Plaintiff contends that it has at least established doubt as to validity and therefore we should examine the evidence of prompt and extensive use and the tribute paid it by the action of competitors in adapting or copying it, all of which is impressive.

We are convinced that there is patentable novelty in the four claims of the combination in issue. This, other facts appearing, may spell invention, even if all the elements are old ones. The anti-cavitation plate may well have been old, but as an old element, in a new combination, it was, in cooperation with other elements, what gave to this motor its increased efficiency.

There was, also, it seems to us, cooperative relationship between the anti-

[2] "12. A propulsion device for water craft having a stationary support carrying a bearing, a drive shaft casing mounted to turn in said bearing, a motor mounted on the upper end of said drive shaft casing with its drive shaft disposed within the drive shaft casing and said shaft passing down-wardly therethrough, a housing mounted on the lower portion of the drive shaft casing and turnable therewith for steering, said housing being formed with a substantially horizontal barrel-like portion, a propeller shaft mounted within said barrel-like portion and having a driving connection with the motor drive shaft, a propeller on said propeller shaft, said housing having an anti-cavitation plate extending rearwardly therefrom overlying the path of forward travel of the propeller blades, said housing having unbroken outer wall surfaces at each side extending upwardly from the said barrel-like portion to said plate and from said plate upwardly a substantial distance to the top of the housing, and said housing having a substantially vertical internal passage leading to the water jacket of the engine, said passage opening below the normal water level."

cavitation plate and stream-lining of a portion of the outboard motor structure.

We must deny anticipation by the prior art, although such prior art undoubtedly weakened the claim of patentable novelty. There was no anticipation of the combination described in these claims. There were old elements in the combination. For the purpose of the argument it may be conceded that all of the elements were old. But significant is the fact that all the old elements had never before appeared in one combination. The combination was therefore new, although made up of old elements.

The fact that the inventor made use of elements each of which was old, although not sufficient to establish anticipation, does bear heavily against him on the issue of patentable novelty. This is the debatable issue which this patent presents. We resolve it in appellants' favor, (a) because it so appeals to us, as involving more than mechanical skill, and (b) because of the extensive public use—its commercial success and the recognition which has been given it by competitors and users.

The defense of aggregation falls in the face of what is established by testimony, and confirmed by our study of the operation of water propulsion devices in outboard motors.

If the two elements which are the asserted novel features of this invention cooperate in their action, the defense of aggregation fails. Accepting the most liberal construction of the term "aggregation," it could not in this case stand as a bar to plaintiffs' structure evidenced by claims 11, 12, 13, and 14.

In respect to infringement of these claims, the court found, and we agree with the findings, that claims 13 and 14 were infringed. Claims 11 and 12, however, were found to be not infringed, although the District Court's opinion was expressed in this language:

"I think probably the defendant has the better of that argument."

Infringement of claims 11 and 12 turns upon whether the defendants' accused motor is mounted on the upper end of the drive shaft casing. Construing this language as we believe it should be construed, *it is so mounted.* We are convinced that claims 11, 12, 13, and 14 of Patent No. 1,716,962 are valid and infringed.

 Patent No. 1,786,835 deals with an altogether different problem in outboard motors. It covers a water cooling system specially adapted for outboard motors.

Six claims, 1, 4, 5, 8, 9, and 10, are involved. The court found 5 and 10 to be not infringed, and claims 1, 4, 8, and 9 to be infringed, if the patent be upheld. The court concluded that all claims must fall because void for aggregation.

While not agreeing with the District Court that the defense of aggregation defeats this patent, yet we do not find novelty in the structure over the prior art. What the inventor did, was not more than we should expect of a mechanic who was skilled in this art. Defendants' copying the structure has made us pause, for in this copying there was a real tribute, a recognition of high skill, if not of genius. But ·defendants' conduct in copying plaintiffs' motor is by no means conclusive. We must view the patent from the standpoint of the public, not merely as a case against one who was appropriating a competitor's property.

 Notwithstanding our doubts, we hold the claims of this patent invalid, because lacking in patentable novelty. This conclusion makes it unnecessary for us to pass on the alleged (and denied) infringement or to discuss ·the weakness of the specifications in failing to show the features here charged to be novel.

The decree is affirmed, except as to that part which deals with patent No. 1,716,962. As to it, the decree is reversed with directions to enter the usual decree in such a case, enjoining defendants from further infringing, directing an accounting for the past infringements, and for costs and such other relief as may be proper.

The costs of this appeal shall be borne equally by the parties.