**PARAMOUNT INDUSTRIES, Inc., v. SOLAR PRODUCTS CORP. et al.**

**Civ. No. 8981.**

United States District Court
E. D. New York.

Sept. 8, 1950.

332

———◆———

Laurence B. Dodds and Harry J. Halperin, of New York City, for plaintiff.

Pennie, Edmonds, Morton & Barrows, of New York City, for defendants.

ABRUZZO, District Judge.

This action was brought by Paramount Industries, Inc., against Solar Products Corporation, Lamplighter Corporation of America, and R. H. Macy & Co., Inc., for infringement of claims 1–3, inclusive, of Sobel patent No. 2,435,164 which is for a "Fluorescent Hand Lamp" and for infringement of the Harris patent design No. 147,440 for a "Portable Fluorescent Electric Lantern."

The complaint asserts in addition a claim for unfair competition from and after September 9, 1947, the date of the issue of the Harris patent.

The plaintiff, Paramount Industries, Inc., which for brevity will be hereinafter referred to as "Paramount," manufactured and sold a portable fluorescent lamp under the trade mark "Totelite." The defendant, Solar Products Corporation, hereinafter referred to as "Solar," was the original manufacturer of a competitive portable fluorescent lamp sold under the name "Lamplighter." The defendant, Lamplighter Corporation of America, hereinafter referred to as "Lamplighter," is the successor to Solar in this field. The defendant, R. H. Macy & Co., Inc., hereinafter referred to as "Macy," is a retailer of the "Lamplighter" manufactured by the defendants Solar and Lamplighter.

The witness Roters called by the plaintiff is a consulting engineer and adjutant professor in Stevens Institute of Technology in Hoboken, New Jersey, and his testimony indicated that from experience he was qualified to testify as an expert with respect to the patents at issue and the patents alleged by the defendant to be a bar to any recovery in favor of the plaintiff. He testified as to the comparative structures of the two lamps, to wit, the plaintiff's and the defendants'. He described the lamp under the Sobel patent as follows:

The essential features of the Sobel fluorescent hand lamp which co-operate to provide the desired characteristics of compactness and facility of assembly and disassembly are as follows, the reference numerals corresponding to those of Figs. 1, 2, and 3 of the patent and the upper drawing of Exhibit 8, which is similarly numbered:

(1) An elongated open U-shaped wall member. This is the wall member 12.

(2) A seating groove extending longitudinally of each open edge of the wall member 12. This groove is formed either by the Z-strap 24, 25, 26 spot welded to each open edge of the wall member 12, as shown in Fig. 3 of the patent and as embodied in the commercial "Totelite," Exhibit 6, or *alternatively* it is formed by reversely bending the open edges of the wall member upon themselves, as shown in the upper drawing, Exhibit 8, and described in the Sobel patent at page 1, column 2, lines 48-54, the bent portions 26, 25, 24 forming the groove in question.

(3) Top and bottom flanged closure members engaging opposite ends of the wall member and adapted to be secured thereto. These are the members 10 and 15 (Fig. 1 of the patent), the upper member 15 being secured to the wall member 12 by spot welding and the lower member 10 being secured thereto by three screws 14.

(4) A translucent front member retained in position by the seating grooves and the closure members. This is the transparent plastic front member 30, the edges of which seat in the grooves described and the ends of which fit within the flanges of the top and bottom closure members 15 and 10, respectively.

(5) An elongated *unitary* fluorescent tube support and reflector assembly. This is the reflector 27, 28, 29 to which is secured at either end tube supports 37 to

form a unitary structure which may be removed as a unit from the housing.

(6) The longitudinal edges 29 of the reflector assembly terminate in the grooves and are retained in position by the front member 30 and the closure members 10 and 15.

(7) As an optional subsidiary feature, the seating grooves are open and extend rearwardly, as shown in Exhibit 8, and the reflector assembly has rearwardly extending flanges 29 engaging the same. Claim 2 includes this subsidiary feature.

(8) As a second subsidiary feature, the front member 30 (Feature 4) is resilient and convex forwardly and the reflector assembly 27, 28, 29, 37 is forwardly concave to provide space there between for the fluorescent tube 38. Claim 3 includes this subsidiary feature.

The defense alleges that the Sobel patent covers merely a tin box for housing the batteries and wiring connections of a portable fluorescent lamp and, as such, it involves nothing remotely inventive, all material and substantial parts of it having been disclosed in prior patents.

The "Lamplighter" is unquestionably a copy in all its principles of the "Totelite" with the exception that instead of a U-shaped case it has a case which slants down from the top of the back, but there is a fluorescent tube, reflector, batteries, and a handle to the lamp, and functionally operates exactly like the "Totelite."

If the Sobel patent is sustained, there is infringement, for nowhere in defendants' briefs do they seek to disclaim infringement but rest their defense on the theory that the "Totelite" is an unpatentable article and that all of its principal parts have been disclosed in prior patents.

The plaintiff contends, on the other hand, that the "Totelite" is a typical instance of an invention comprising a number of elements which, though individually old in different environments, cooperate in a novel manner to form a new and useful combination.

After the Sobel patent was issued to Paramount, it actively developed and promoted the Sobel lamp under the name of "Totelite." A great deal of money was spent in developing the light in its engineering department, and the "Totelite" was advertised extensively in trade papers and magazines. Large expenditures were made for that purpose. Sales increased to an encouraging point, and the plaintiff claims that its business was fast getting on a firm foundation.

The plaintiff's expenditures amount to some $30,000 for the development and engineering design; $26,000 in tools, dies, and set-up charges; $35,000 for national advertising and sales brochures; and some $31,000 in other selling expenses, excluding traveling expenses. This amounted to approximately $122,000. This testimony stands undenied. As an indication of the success of the "Totelite," 79,600 lamps were sold in 1946.

The defendants' "Lamplighter" appeared on the market in 1947 and, due to the low price of the "Lamplighter" in the market, Paramount's sales dropped sharply. The defendant entered this field in 1946 at which time it purchased 1,000 portable fluorescent lamps called "Portolites" from a firm "Jacwo." That company in turn purchased them from a concern known as the Metalcraft and Electronics Mfg. Co. This latter company assembled the first "Totelites" for the plaintiff Paramount. In the summer of 1946, the defendant was unable to obtain any more lamps from the firm Jacwo and purchased 400 "Totelites" from the plaintiff Paramount for resale. Solar in the fall of 1946 employed one Edward P. Werner, one of the former partners in the Metalcraft and Electronics Mfg. Co., Paramount's first assembler of the "Totelite." It appears singular that at this time Solar prepared its first sketches of its "Lamplighter" for submission to a draftsman. Two companies were employed for the production of tools and dies for their "Lamplighter." This later lamp appeared on the market for the first time in February or March, 1947. At first the "Lamplighter" was introduced at a retail price of $14.25, compared with the price of $15.95 for Paramount's "Totelite." This competition caused Paramount sales to fall off sharply. On February 17, 1948, the

plaintiff felt called upon to notify the defendants of the infringement of their patent. In that same month, the price of the "Lamplighter" was reduced to a retail price of $9.95 and compared to Paramount's price of $15.95 it virtually put the plaintiff out of business, the sales of the "Totelite" dropping to some 5,000 lamps in 1948 and approximately 2,000 lamps in 1949.

Defendants' brochures and advertisements followed in principle the pattern set by the plaintiff. This evidence is not contradicted by the defendants. Their defense is based upon the theory that the Sobel patent is not valid as it was anticipated by the prior arts in existence at the time it was filed in the Patent Office. They cite prior patents in support of this defense. The reference patents cited are as follows:

2,090,239—Strang. This patent relates to a continuous channel lighting fixture to be attached to a wall or ceiling. Witness Roters pointed out that it may have disclosed some isolated elements of the Sobel patent invention. It contained no teaching useful to an engineer designing a portable fluorescent lamp.

2,239,343—Rumbaugh. This patent relates to a stationary illuminated sign, not a portable lamp.

2,342,570—Biller. This patent relates directly to a fluorescent lighting fixture and not to a portable fluorescent lamp. Some features of the Biller patent might be said to resemble the Sobel patent in that it has a fluorescent tube and a channel-shaped member. The evidence indicated that the term channel-shaped and U-shaped have very definite connotations in the engineering art and these are not to be construed borderline. The Biller patent did not disclose a reflector assembly retained in position by a translucent front member. It did not have a reflector assembly having rearwardly extending flanges engaged in the wall member, nor did it disclose the construction of a front member to provide a space for a fluorescent tube. The Biller patent is described in the first part as follows: "* * * the lampholders are removably secured the fixture, and the replaceable ballast has relatively long lead wires that are permanently secured thereto and are adapted to be secured to the lampholders and to the wires of the current supply circuit. * * *"

2,391,325—Maurette. This patent relates to a fluorescent lamp connected to a power cord and having a curved guard or grill. This power cord would necessarily have to be connected to electric current. It is not a portable lamp and it does not have batteries permitting it to be carried by hand but of necessity must be connected to some electric outlet.

2,413,599—Beck. This patent does relate to a portable fluorescent lamp. It discloses a portable fluorescent lamp and from the figures, while it is termed a portable fluorescent lamp, it was quite complicated in its detail and not easily understandable and probably difficult to manufacture. Roters testified that it lacked all of the essential features of the Sobel invention. The Beck patent is owned by the plaintiff, and the testimony indicates that it found it impossible to manufacture this lamp from the figures the patent contained and it could not be marketed.

Of these five patents offered as a defense, only the Biller patent was not considered by the Patent Office.

In so far as the Sobel patent is concerned, claims 1–3, inclusive, have two new features, to wit, approximately a 180-degree luminous front and a fluorescent tube. While the device looks simple in its design, the fact is that it was the first one put on the market with these two singular features. No one apparently had ever thought of making that type of a light that could be carried, throwing a very luminous light for some distance over a wide area. The type of seating grooves in the Sobel patent is different than in any other patents cited by the defendants.

That the plaintiff's patented lamp "Totelite" is commercial is amply proved by the number sold when it was first manufactured and put on the market.

■ This patent comes within the purview of the case of Lewyt Corporation v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, in which case the court stated as follows, 181

F.2d at pages 857–858: "Though the District Court may have correctly found that each of the elements in the Yonkers cleaner was old, it does not follow that Yonkers' combination was ipso facto unpatentable, for a novel combination of old elements which so cooperate as to produce a new and useful result or a substantial increase in efficiency is patentable. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 31 S.Ct. 444, 55 L.Ed. 527; Outboard Marine & Mfg. Co. v. Muncie Gear Works, Inc., 7 Cir., 119 F.2d 404, 407. * * *"

■ The Patent Office fully considered all but one of the patents cited by the defendants. This strengthens the presumption of validity, and the courts have to some extent consistently followed this doctrine, especially where the references relied upon by the defendants were fully considered by the Patent examiners. They are presumed to be experts in the patent field, and their findings should not be disturbed in the absence of new and convincing evidence of error.

In Williams Manufacturing Co. v. United Shoe Mach. Corporation, 6 Cir., 121 F.2d 273, affirmed, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537, the court said, 121 F.2d at page 277: "To the presumption of validity that attaches to a granted patent, where the most pertinent prior art has been cited against it in the patent office, there must probably now be added the force of a growing recognition of finality that is generally being accorded to administrative determinations supported by evidence, on the ground that the administrative agency is expected to have developed an expertness in its specific field beyond what may be expected from the courts wherein adjudications range the whole field of human controversies. * * *"

■ In view of the facts adduced at the trial and after reading claims 1-3, inclusive, of the patent and taking into consideration these decisions, I believe that the Sobel patent should be held valid in fact and in law.

With regard to the question of infringement, the ornamental appearance of the "Lamplighter" is substantially identical to the manufactured "Totelite." They function exactly alike, and looking at the two lamps the only difference that the eye can discern is in the shape of the box and the arrangement of the buttons. The putting together of the box and the turn of the flanges in each one might be somewhat different but in principle the same function is arrived at. They are both designed to be readily disassembled for replacing the batteries and the fluorescent light bulb, and they are both designed to throw a luminous light for some distance over a wide area. It is evident that the defendants infringed upon plaintiff's patent and the facts indicate that they deliberately copied the Sobel patent, making minor changes in the appearance of the box. It appears from the evidence that the defendants first became aware of the existence of the "Totelite" through their prior purchases, as I have outlined in this opinion.

■ Mr. Roters testified that the "Lamplighter" embodies essentially the same structural elements as described in the Sobel patent and that there was only a minute difference with respect to the flanges. Infringement occurs if the defendants' "Lamplighter" performs the same functions in substantially the same way to obtain the same result. Sanitary Refrig'r Co. v. Winters, 280 U.S. 30, 41-42, 50 S.Ct. 9, 74 L.Ed. 147. This case was cited with approval in the recent case of Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854.

The Court stated in Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L. Ed. 935, pages 936-937: "* * * if two devices do the same work in substantially the same way, and accomplish the same result, they are the same, even though they differ in name, form or shape."

In view of my finding of validity of the Sobel patent, I do not deem it necessary to go into the question of unfair competition as that becomes unimportant.

A decree, therefore, may be entered in accordance with this decision against the defendants, and findings of fact and conclusions of law submitted.